**GENERAL ELECTRIC COMPANY, a corporation, Appellants,**

v.

**Max REES and Mrs. Max Rees, husband and wife, individually, and Max Rees, as guardian ad litem for Sally Kay Rees and Judy Rees, Minors, Appellees.**

**No. 13895.**

United States Court of Appeals Ninth Circuit.

Nov. 24, 1954.

Moulton, Powell, Gess & Loney, Kennewick, Wash., for appellant.

Theodore D. Peterson, Horrigan, Merrick, Peterson & Merrick, Pasco, Wash., for appellees.

Before ORR, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an action for damages resulting from alleged negligence. It was set up in plaintiffs' second cause of action in general that one Harvey, employed by General Electric, was in the course thereof driving a bus on a public highway on January 15, 1952. It is further claimed that Harvey was suffering from a heart condition and hardening of the arteries to such an extent that his continued employment as a bus driver was dangerous to the public at large. It is complained that Harvey, under these circumstances, suffered a heart attack as a result of which the bus collided with the dwelling of plaintiffs Rees and caused personal injuries and destruction of property.

The allegation of negligence is as follows:

"* * * that the said Ivan C. Harvey had been examined and treated by physicians in the employ of the defendant, and that the defendant knew or should have known of the state of health of Ivan C. Harvey, and that he was afflicted with hardening of the arteries and a heart condition and subject to heart attacks and that therefore the defendant knew or should have known that his continued employment as a bus driver would be dangerous to the public at large and knew or should have known that his continued employment might result in injury to persons and property * *."

A motion to dismiss the complaint was overruled.

The defendant answered, setting up the death of Harvey in the course of operating the bus, pleading act of God and unavoidable accident, but otherwise denying the allegations except that the happening of the accident, the employment of Harvey in line of duty at the time thereof and certain injury of plaintiffs and to their property were admitted.

The case came on for trial. Briefly, the evidence showed Harvey was in the employ of defendant and drove a shuttle truck to carry other employees of defendant to and from the Richland plant. Harvey was taken ill and was hospitalized under the care of his own personal physician, Dr. Corrado, from December 1 to December 24, 1951, on which day he was discharged. On December 27, 1951, his private physician released him to return to work.

General Electric had a policy which required any employee who had been ill to present himself to a doctor retained by the company before the former could return to work. Harvey, in accordance therewith, advised Dr. Martin L. Weitz, an industrial physician employed by the company, that he had had an attack of bronchial asthma, from which he had recovered after having been hospitalized, and that his personal physician had authorized his return to work. The physician inspected Harvey's chest and listened to his heart and lungs with a stethoscope. There was no record dealing with Harvey's hospitalization in possession of the company, and the doctor did not have any information that Harvey had previous heart trouble.

An autopsy was performed, and it was determined that a miocardial infarct, which is a region of death of the heart muscle, was the cause of death, that this had existed from two to seven days before death, and that it could not, in the opinion of the specialist, have been detected prior to seven days before that time. The expert testified that there was a coronary thrombosis which he believed occurred immediately before the infarct.

The hospital records from December 1 to December 24 were introduced in evidence, which showed that Dr. Corrado was giving digitalis to Harvey there, and he testified that he gave this drug to him after he left the hospital. Also, electrocardiograms showed that there was a disturbed condition of the heart.

An expert from a different city testified that he had examined the post mortem report and the hospital records and, in his opinion, Harvey had a serious heart condition and that, if he had had Harvey as his patient, he would not have permitted him to go back to work.

The court instructed the jury that there was no duty of the company to examine Harvey before he went back to work, but, having assumed to examine him, the company was liable if the "physical examination was not carried out with reasonable care and that the exercise of reasonable care of the defendant's agent or employee could or should have revealed the employee, Ivan Harvey, was not physically competent for the purpose for which he was retained in employment by the defendant."

■■ The second count of the complaint did not state a cause of action or a claim upon which relief could be granted. There are three essentials for such a showing. A duty must be established owing by defendant to plaintiffs. A breach of the particular duty must be counted upon. It must be shown that, as a proximate result of the breach, the plaintiffs suffered injury legally compensable and not merely damage.

The gist of this count is that Harvey, the driver, "was in poor health and suffering from a heart condition and hardening of the arteries," that Harvey "had been examined and treated by physicians in the employ of defendant and that the defendant *knew or should have known* of the state of health of Ivan C. Harvey and that he was afflicted with hardening of the arteries and subject to heart attacks and that *therefore* the defendant *knew or should have known* that his continued employment would be dangerous to the public at large and *knew or should have known* that his continued employment might result in injury to persons and property."

■ Defendant owes no such duty to members of the general public. It is conceivable that an industrial concern might owe a duty to the employee to have a doctor examine him in order that he might not be placed in an extra-hazardous situation on account of disabilities not obvious to an ordinary observer or of which it obtained knowledge in fact. More remotely, fellow employees might rely upon the performance of this obligation. But driving the vehicle described certainly would not fall into a classification of extra-hazardous employment either for Harvey or for the fellow employees who rode as passengers. A motor vehicle is not a dangerous instrumentality. Obvious physical defects can

be contemplated which might place a duty on the employer even here. The usual charge in that connection is negligence of the employee, which is not the gist of this count. If otherwise valid, the employer must still have had actual knowledge. The employer would, however, owe no duty to the general public. Even the enactments which require an employer "to use every care, device and protection" to protect life and limb do not raise obligations in favor of members of the public. Here the pleading requires the court to hold defendant liable to an insurer against the happening of the accident, not because of what its employees knew, but because of the happening of an untoward accident.

■ Everyone concedes and the court instructed that defendant was under no duty to have a doctor examine Harvey. This doctrine is correct. The above discussion shows that it was improper for the court to impose upon defendant toward the public any duty unless defendant positively knew, through its physician or otherwise, that Harvey might die at any moment and that risk and danger to the public were involved.

The allegation that Harvey "had been treated by physicians in the employ of defendant" did not show a duty created thereby to members of the public. The "volunteer" doctrine is not applicable, as it is not shown that the defendant or its doctors were attempting to do anything. There is no allegation of the nature of the examination. It is not set up that the examination discovered or was concerned with hardening of the arteries or a heart condition. There is no charge that the physicians of the company acted negligently.

There is nothing to justify the conclusion of law that *therefore* defendant knew or should have known that "his continued employment would be dangerous to the public at large." Too many people drive cars with the consent of competent physicians, who have heart trouble or hardening of the arteries, on all the highways of the country, to make

this valid. Unless the law makes defendant an insurer, this count gives no ground on which relief could be granted. The statutes and decisions of the State of Washington have never given foundation for the recovery on any such theory. Acceptance thereof could be justified if at all only by our intuitive perception of hidden and speculative analogies.

■ The first cause of action might well be valid against a motion to dismiss on account of the unspecific general charge of negligence of the employee. But this was disproved at the trial. Fate struck Harvey dead instantly. There is nothing to show that he had any idea that there was even remote danger in operating the bus in his then state of health. The charge of the first count was therefore properly withdrawn from the jury on account of failure of proof. Plaintiffs did not base the case upon the negligence of Harvey, and the court submitted to the jury only the theory that the company might be liable because its doctor had made a physical examination. Under these circumstances, respondeat superior does not apply. Neither is res ipsa loquitur applicable.

The erroneous concepts which were developed in the amended complaint, however, were given effect at the trial. Defendant relied upon the theory that it was in the exercise of due care. It had employed a physician, who gave a routine examination after Harvey had been off employment and in the hospital for some time. This doctor certified he had been told by Harvey that the latter had been suffering from bronchial asthma and had been under the care of his own doctor, named Dr. Corrado, who had discharged Harvey and permitted him to go back to work. It would seem that this statement presents a complete defense to any charges of negligence. In the first place, defendant was entitled to rely on the certificate of the doctor whom it employed as to the fitness of Harvey. If the company policy was to require a routine check before that certificate or an acceptance of Harvey's statement in con-

nection therewith, the examination by Dr. Weitz served its purposes. Thereby no duty was incurred to anyone.

There was no proof, inference or suspicion that Dr. Weitz, the company doctor, ever heard, knew of or found Harvey had heart trouble. Actual communication of such intelligence to its agent, even a doctor, might have bound defendant. But, if he was required to go further than giving a routine examination, hearing Harvey's story and finding he was permitted to work by his own doctor, a tremendous burden is thrown on the company, not only in this case, but with every returning employee. There is no proof here that this condition would necessarily have been discovered by a stethoscope examination. It cannot be contended that the company is required to give an x-ray examination to determine the position and size of the heart and take cardiograms to be sure there is no latent disability.

At least, a life insurance company can rely upon the statements of the person to whom the policy issues as to when he last saw a physician and as to what he was treated for, as warranties for the breach of which the policy would be unenforcible. But here the burden was placed upon the company, not only of going behind the certificate of its own employed doctor, but of examining the truth of the statements of Harvey and the recommendation of his personal attending physician. The trial court placed the burden on the defendant to prove not only that it did not know, but that, by complete physical examination and diligent inquiry, it could not have discovered that its employee had heart trouble, no matter what Harvey said to the doctor for defendant.

But the trial court went further than this. It would not permit the jury to hear what Harvey said to defendant. The company, in an effort to show it used the care which would have been expected of an ordinary reasonable prudent person in dealing with an employee who had been ill, offered to prove the responses of Harvey to the dispatcher each

morning when the former reported to take the bus out for his regular duty. The trial judge excluded the testimony upon objection of plaintiffs. This was error. Reversal must follow. The jury were thus led to believe the company could not free itself from responsibility except by discovering the actual condition.

■ A possible basis for liability might have been that the defendant knowingly employed an incompetent doctor. But after all, a physician must be licensed by the state in which he practices, and, if the state authorities are satisfied of his competency, the defendant should not be required to assume the contrary unless the fact is brought to its attention. There is no law to the contrary.

■ Another possible basis for liability would be that, assuming that he had all the data which became known after the event, the company doctor was negligent in permitting Harvey to continue in employment. If such liability is to be imputed to the company, it certainly could be no higher duty than a doctor would owe to his patient. In a malpractice action against the doctor, the rule of law is that he would not be liable for an error in judgment and he would only be held to those professional standards which applied to the ordinary practicing physician in the locality.

■ There was no proof of failure to meet this standard. A cardiac expert from a town about eighty miles away testified, after the death and the autopsy, that he would not have allowed a patient of his to go on the job if he had had the data in the hospital records. But there are several defects here. The expert was testifying as to records which the company doctor had never seen and in light of the fact of death. The expert was applying standards not applicable to the ordinary practitioner in Richland, but those binding upon an expert in heart diseases in Yakima.

Furthermore, there is proof positive in the record that an ordinary practicing

physician in Richland, when he had before him all the data that Dr. Weitz, the company doctor, could have had, recommended that Harvey go back on the job. Only after the event might it possibly be said from an expert speculation that this was a professional mistake. But there is no such evidence in the record. The company doctor cannot be held to higher standards. Nor can defendant be held for an error in professional judgment. It is not an insurer on these rigid terms.

If Harvey felt in good condition and had been advised of everything which his own physician knew, he could not have been held liable if he had fainted at the wheel and caused the damage. The uncontroverted evidence is that the condition which caused his death did not develop until two weeks after he left the hospital and his own doctor had advised him he could go back to work and after examination by the company doctor. The statements of Harvey as to how he felt were therefore of cardinal importance.

Items which neither the company nor the doctor whom it employed knew and some of which no one knew or could predict until after the event and an autopsy were admitted in evidence and appraised by an expert on heart diseases. This was, of course, prejudicial. Withal, there was no proof that Harvey would be dead instantaneously and without warning or that it would be dangerous for him to drive a bus when he was last seen by the company physician. Yet the court instructed that the only factor for consideration was that he was examined by the doctor for defendant.

The net effect was that the jury was permitted to speculate as to basis of liability in the light of very inflammable materials, such as sympathy for the unfortunate plaintiffs, the feelings as to great corporations, and speculation as to how much a beneficent government would have to pay of this judgment. The effect of such considerations would have been avoided if the law had been followed.

The defendant protected its record through the trial, called attention to the erroneous instructions and proposed proper instructions which were refused. Motions at the end of plaintiffs' case and at the end of all the evidence were improperly denied.

The courts should not impose liability in the absence of fault.

Reversed and remanded.