## Moskins Stores, Inc. *v.* DeHart et al.

[No. 27,469.   Filed November 25, 1940.]

*William H. Bales,* of Muncie; *James A. Ross* and John M. Kitchen,* both of Indianapolis (*Frederick E. Matson, Robert D. McCord, Austin V. Clifford, Adolph Schreiber, Harry T. Ice,* and *James V. Donadio,* all of Indianapolis, of counsel) for appellant.

*McClellan & McClellan* and *Benadum & Cecil,* all of Muncie, for appellees.

FANSLER, J.—The appellee Susie DeHart brought this action against the appellant and its employee, the appellee Raymond G. Poth, to recover for injuries sustained because of an assault and battery committed on her by Poth.

It is alleged, and appears from the evidence most favorable to the plaintiff, that the appellee Poth was employed by the appellant as a collector; that the plaintiff had purchased certain clothing from the appellant, and that Poth went to the plaintiff's home to collect; that the plaintiff told him she was unable to pay anything on her account at that time; that an altercation ensued during which Poth choked the plaintiff, causing a nervous condition which has permanently impaired her health.

Upon the question of whether a master is liable for an assault and battery committed by a servant employed to make collections there is some conflict in the authorities. 18 R. C. L. § 263, pp. 807, 808; 39 C. J. § 1509, p. 1309. It is said on page 808 of 18 R. C. L .: "But for an assault resulting from an attempt on the part of the employee to collect money due to the employer, the latter is not as a rule to be held accountable." In Mechem on Agency, 2d Ed., Vol. 2, § 1978, pp. 1540, 1541, 1542, 1543, it is said: "The servant's act in punishing persons who annoy him in the performance

of the service, or who interfere with or injure the master's property, or his own gratuitous act in using personal violence as a means of coercing the performance of contracts or the payment of debts due the master, can very seldom be regarded as within the course of the employment. *A fortiori* will this be true where the violence is resorted to for the purpose of coercing the performance of that in which the servant was primarily interested rather than the master. It is true that expressions indicating a wider liability are sometimes to be found. Thus in a case in Wisconsin (*Bergman* v. *Hendrickson et al.* [1900], 106 Wis. 434, 82 N. W. 304, 80 Am. St. Rep. 47) where the servant who was a barkeeper had made an assault upon one of his master's patrons, for the purpose, as it was contended, of coercing payment for liquors which he had purchased, the court said: 'If B (the servant) committed the assault for the purpose of collecting payment for his master's liquor, he was within the scope of his employment. It was his method of performing the duty delegated to him, and, although the method may not have been either expressly authorized or even contemplated,—nay, although it may have been expressly prohibited,—yet the master is liable for the damages caused thereby, provided he has entrusted to the servant the duty he was attempting to perform.' Unless there was something indicating that the use of force was contemplated or usual,—of which there was no evidence —or unless the court deemed the case to fall within the principle of those in which a special duty of protection is supposed to exist (which seems probable from the cases cited), it must be thought that the rule here laid down is wider than sound principle or the authorities generally will justify. It surely cannot be true that because the master has entrusted to a servant the per-

formance of a duty, the master can be held responsible for whatever method the servant may adopt in attempting to perform it." In the recent Restatement of the Law, which was written in the light of all of the cases referred to in the texts above cited, and of substantially all of the authorities referred to in the brief, it is said:

"A master who authorizes a servant to perform acts which involve the use of force against persons or things, or which are of such a nature that they are not uncommonly accompanied by the use of force, is subject to liability for a trespass to such persons or things caused by the servant's unprivileged use of force exerted for the purpose of accomplishing a result within the scope of employment.

"*Comment:*

"*a. Nature of employment.* Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. The making of contracts or the compromise, settlement, or collection of accounts does not ordinarily have this tendency. On the other hand, the employment of servants to recapture property, to take possession of land, or to deal with chattels which are in the possession of another, is likely to lead to altercations, and the master may become liable, in spite of instructions that no force shall be exerted against the person of the possessor." Restatement of the Law of Agency, Vol. 1, § 245, pp. 547, 548.

It would seem that the rule laid down by Mechem and in the Restatement of the Law is based on sound

principle; that a master is only liable for the use of force by a servant where the acts to be performed by the servant are of such a character that they are not uncommonly accompanied by the use of force, or where there was something in the employment indicating that the use of force was contemplated. It would seem, as indicated in the Restatement of the Law, that the collection of accounts does not ordinarily come within this class; and, to take such a case out of the rule, something more than mere employment to collect accounts must be shown.

The case at bar was begun and tried upon the theory that if the assault and battery was committed in the course of the servant's efforts to collect the amount due his master, the master was liable without regard to whether or not the collection of accounts is ordinarily accompanied by the use of force and without any consideration of the question of whether force was contemplated by the master. The appellee says in the brief: "In this case, we have a large corporation selling wearing apparel on credit. That because of selling such merchandise on credit, the business of appellant contemplated and necessitated a rigid method of collection and the employment of regular collectors. For example, its account books stated 'Payments must be made promptly at store, as agreed; otherwise collector will call next day.' Further, here we have a case where the servant was performing his duties as such collector and committed this assault while he was attempting to do the very thing for which he was employed." The mere fact that the appellant is a corporation selling wearing apparel on credit, and that it employed regular collectors, and that it sought to collect its accounts promptly, is not sufficient. In order to hold the master for an assault and battery by

a collector, it is necessary to show that the use of force was contemplated or usual in the conduct of the master's business of collecting accounts, or that the master knew, or had reasonable cause to know, that the servant was the type of person who was likely to resort to force in the course of his efforts to collect the accounts. No such facts were alleged or proven. The case was tried upon the theory that the mere fact that the assault and battery was committed in an effort to collect the account is sufficient to charge the employer with responsibility. While the authorities differ, we conclude that the sounder reasoning does not sustain such a theory.

Our conclusion makes it unnecessary to discuss the errors assigned in detail.

Judgment reversed, with instructions to set aside the judgment and verdict, and to sustain the appellant's demurrer to the complaint with leave to amend.

NOTE.—Reported in 29 N. E. (2d) 948.