Arthur A. **LANGE**, Lorraine **Roberts**, individually and as Personal Representative of Clyde M. **Roberts**, deceased, and the executrix of his estate, and Ohio Farmers Insurance Company, an insurance corporation, Plaintiffs,

v.

**B & P MOTOR EXPRESS, INC.**, Roseland Cartage Co., Paul Van Mele and Joseph Van Mele, individually and as co-partners doing business as Roseland Cartage Co., and Donald H. Hoefle, Defendants.

Civ. No. 3464.

United States District Court
N. D. Indiana,
South Bend Division.

Aug. 23, 1966.

Benjamin Piser, South Bend, Ind., and Arlo·McKinnon, of Kersten & McKinnon and Howard W. Bast, Milwaukee, Wis., for plaintiffs.

Arthur A. May, of Crumpacker, May, Levy & Searer, South Bend, Ind., for defendants.

## ORDER

GRANT, Chief Judge.

This cause comes before the Court on plaintiffs' motion to amend their complaint to assert a new cause of action against the defendant-employer which alleges in substance the negligence in hiring an unsafe or negligent truckdriver. The importance of the question under Indiana law which was thereby raised prompted the filing of briefs by the parties. The Court, after thorough consideration, is of the opinion that the motion ought to be denied.

The original complaint on file seeks to recover for personal injuries sustained when defendants' tractor-trailer rear-ended plaintiff Lange's motor vehicle on the Indiana toll road. That complaint is in nine paragraphs. The first three allege diversity between the parties and the requisite jurisdictional amount.[1] The fourth paragraph alleges that at or about 5:15 A.M. of Thursday, October 11, 1962, on the westbound portion of the Indiana toll road in Porter County, Indiana, the defendants, through their agent Donald Hoefle, caused their 1960 Ford tractor-trailer to collide with the rear of a pick-up truck being operated in a westerly direction by the deceased, Clyde Roberts.

1. The deceased, Clyde M. Roberts, was a citizen and resident of the State of Wisconsin, as is Arthur Lange; all of the defendants reside in Indiana.

The fifth paragraph asserts a claim for relief under the theory of *respondeat superior* against the defendant-employers for the reason that, while in the scope of his employment, Hoefle operated the tractor-trailer (a) without maintaining a proper lookout; (b) without maintaining proper management and control; (c) at an excessive rate of speed under the circumstances and conditions then existing; (d) without exercising due care in overtaking and passing the pickup truck. The sixth paragraph claims that the foregoing acts of negligence were the proximate cause of the injuries sustained by plaintiffs Lange and Roberts. Paragraphs seven, eight and nine recite the extent of the injuries to plaintiffs and their vehicle.

Defendants in their answer to the original complaint admitted jurisdiction and the fact of the collision. What is more important, they admitted that Hoefle was operating within the scope of his employment at the time of the collision. All other material allegations were denied.

The amendment tendered by plaintiffs concerns only paragraph five of the complaint. It is in the form of an additional allegation of negligence on the part of the defendant-employers, and reads as follows:

"As plaintiffs are informed and believe, in addition to the negligence and failure to exercise due care stated above, the defendants B & P MOTOR EXPRESS, INC., ROSELAND CARTAGE CO., a corporation, PAUL VAN MELE and JOSEPH VAN MELE, individually and as co-partners doing business as ROSELAND CARTAGE CO., and each of them, were negligent and failed to exercise ordinary care in that, prior to and on October 11, 1962, said defendants employed the defendant DONALD H. HOEFLE to drive the tractor-trailer which on October 11, 1962 he negligently drove into the rear of the Chevrolet truck driven by CLYDE M. ROBERTS and occupied by the plaintiff ARTHUR A. LANGE as a passenger. As plaintiffs are informed and believe, the defendants employed and continued to employ the defendant DONALD H. HOEFLE to drive said tractor-trailer when they knew or in the exercise of due care should have known he had been a negligent and unsafe driver of a tractor-trailer in the past and as a result had theretofore driven a tractor-trailer into the rear of a passenger automobile on a public free-way, inflicting serious injuries upon the occupants and causing the death of one of them; that upon the basis of his driving record he was unsafe to be employed by the defendants as the driver of a tractor-trailer and their employing him in that capacity exposed the public using the highways, including said CLYDE M. ROBERTS and this affiant, ARTHUR A. LANGE, to an unreasonable risk of harm."

In substance, then, the amendment alleges negligence on behalf of the employer by reason of his hiring or retaining in employment "a negligent and unsafe driver" who, because of his incompetence, caused personal injury to the plaintiffs. The issue presented for determination is whether Indiana law permits pleading a separate count of negligence in hiring under the facts as alleged in the amendment.

I

It will be useful, prior to reviewing the Indiana authorities, to briefly summarize the general state of the law on the negligent-hiring theory. As might be expected, there is little consensus. The leading encyclopedic authorities are in sharp disagreement as to whether it constitutes a well-recognized rule of law.[2] A brief review of selected cases bears this out. One line of authorities supports its application, represented by Monty v. Orlandi, 169 Cal.App.2d 620, 337 P.2d 861 (1959); Kendall v. Gore Properties, Inc., 98 U.S.App.D.C

---

2. Supporting it as a general proposition, 57 C.J.S. Master and Servant § 559.

Opposing it, 35 Am.Jur. Master & Servant § 548.

378, 236 F.2d 673 (1956); Bradley v. Stevens, 329 Mich. 556, 46 N.W.2d 382, 34 A.L.R.2d 367 (1951). Opposing this are those cases which limit the use of the theory to situations in which the plaintiff is a fellow servant of the wrongdoer, notably General Electric Co. v. Rees, 217 F.2d 595 (9th Cir. 1954); Central Truckaway System v. Moore, 304 Ky. 533, 201 S.W.2d 725 (1947); Minot v. Snavely, 172 F. 212 (8th Cir. 1909).[3]

The reasons which support the latter view are clearly more sound. It is argued that, since the true basis for liability of the employer is the imputation of the employee's wrongful act to him, the care or lack of it exercised by the employer in selecting his employee is irrelevant to the issues. All employer-liability cases, including those espousing the negligent-hiring theory, recognize that the employee must be found to have been guilty of some wrongful act or omission which caused the plaintiff's injuries. If so, then an ordinary *respondeat superior* case exists, and the employer would be liable even though he could show that he used all due care in hiring the employee.

Furthermore, a plaintiff under the negligent-hiring count would be entitled to introduce evidence of prior acts of negligence of the employee to show that the employer knew or should have known of his dangerous propensities. Thus the long-standing rule of evidence [4] which would exclude evidence of earlier, specific acts of negligence of the defendant would be jeopardized.

Finally, a close examination of the cases which approve of the rule reveal that special situations may have dictated the result which would entitle the rule to be carefully limited in its application. Repeatedly the same factual pattern emerges: an employer hires a man well-known for his violent temper to perform work which brings him into contact with the public whereupon, at the slightest provocation, the employee intentionally assaults a patron or customer. Representative of the rule are those cases involving janitors,[5] delivery boys,[6] parking lot attendants,[7] and bank employees.[8] They deal with one of the more controversial areas of agency law, the responsibility of the employer for the intentional torts of his employees.

Only recently has there been a major shift in attitude imposing a greater liability on the employer under ordinary principles of *respondeat superior*.[9] The prevailing opinion not many years ago narrowly restricted the scope of a man's employment to include those things which his employer had directed him to do, and no others. Since it was presumed that an employer would never direct the doing of an intentional tort, either expressly or impliedly, then such acts were not considered a part of the employment.[10] While it is true that the term "scope of employment" is interpreted more liberally today to include a number of inten-

---

3. The so-called fellow servant rule imposes upon an employer the duty to use due care in the selection and retention of employees, for the sole benefit and protection of co-employees. For authority distinguishing this from the employer's duty owed to third persons, see Annotation, 8 A.L.R. 574.

4. Pittsburg, F. W. & Co. v. Ruby, 38 Ind. 294, 295 (1871); 1 Wigmore on Evidence § 199.

5. Kendall v. Gore Properties, Inc., 98 U.S.App.D.C. 378, 236 F.2d 673 (1956).

6. Fleming v. Bronfin, 80 A.2d 915 (D.C. Mun.App.1951).

7. Hansen v. Cohen, 203 Or. 157, 276 P.2d 391, 278 P.2d 898 (1954).

8. Murray v. Modoc State Bank, 181 Kan. 642, 313 P.2d 304 (1957).

9. The original Restatement of Agency, § 245 (1934) subjected the employer to liability only where the employment contemplated "the use of force against persons or things," or when it was not "uncommonly accompanied by use of force." The Restatement of 1958 broadens liability to include harm caused by an "act done in connection with" employment, "if the act was not unexpectable in view of the duties of" the employee.

10. Indiana adopted this view. See Moskins Stores, Inc. v. DeHart, 217 Ind. 622, 29 N.E.2d 948 (1940).

tional torts, the fact remains that historically employer liability in this area is uncertain, if not absent altogether.

The negligent-hiring theory when applied to this aspect of employer liability takes on independent significance. It operates regardless of the question of scope of employment, since it does not involve agency or derivative liability. There is no overlap with agency law, for more often than not the employer would escape liability under those principles. Its application is soundly supported by modern policy, as evidenced by the present trend to open up the scope of employment to include intentional acts. It is, in other words, not only workable, but desirable in such special situations.

The theory has been applied in other factual settings, but they exhibit a common trait: a probable absence of liability under ordinary agency principles. For example, in Womack v. Preach, 64 Ariz. 61, 165 P.2d 657 (1946) a 4½ year old child was directed by his father to go on an errand, whereupon the defendant negligently drove against him in a truck. The father brought suit, and the defendant countered with the theory that the father was contributorily negligent by reason of his directing the child to go into a dangerous place. The Court reasoned that the child at the time of the accident was acting as his father's agent, but that a 4½ year old child is not capable of being negligent. However, the Court did find that the father was guilty of negligence in the first instance by engaging his child to enter a place of danger, knowing him to be incapable of comprehending that danger.

Another example is that exception to the charitable immunity doctrine, exempting charitable institutions from liability to patients for the negligence of their employees under *respondeat superior,* which imposes responsibility on such institutions for negligence in hiring or retaining incompetent employees. Richardson v. St. Mary's Hospital, Inc., 135 Ind.App. 1, 191 N.E.2d 337 (1963).

■ We may conclude from this analysis that the mere existence of the employer-employee relationship does not entitle a third person to seek recovery for injuries inflicted by the employee on the theory of negligence in hiring. The use of that theory in the past invites a closer inspection of the factual context to determine the appropriateness of its use. Without intending to be exhaustive, we have found such special situations where the employee committed an intentional tort, the employee was incapable of being guilty of negligence, or where the employer was a charitable institution. In all of these cases ordinary *respondeat superior* principles would fail where sound policy would support a cause of action. However, for the bulk of cases which arise out of the agency relation the negligent-hiring theory is superfluous and confusing. It is not to be applied indiscriminately.

## II

It is against this background that we now review the pertinent Indiana authorities. Plaintiffs rest their case in the main on Broadstreet v. Hall, 168 Ind. 192, 80 N.E. 145, 10 L.R.A.,N.S., 933 (1907) which, they contend, aligns Indiana with those jurisdictions which accept the negligent-hiring theory. There the defendant-father had directed his nine year old son to deliver a message to a business customer who lived some miles away. For this purpose the father supplied his son with a horse which, according to the allegations of the complaint, was difficult to manage. On his return trip the boy, either because of his recklessness or inability to control the horse, ran against plaintiff's carriage, seriously injuring her. The complaint sought to recover on two theories: (1) ordinary *respondeat superior,* in that the father employed the son to deliver a message who, while in the scope of his employment, negligently caused injury to the plaintiff; (2) negligent hiring, in that the father, with full knowledge that his son was incapable of handling the horse, engaged him to deliver the message at which time, by reason of the fact that the son lost control of the horse, the plaintiff was injured.

The plaintiff recovered a verdict after a trial to a jury on these two theories. On appeal the defendant, among other things, objected to the trial court's overruling of his demurrer to the third paragraph of the complaint which raised the negligent-hiring theory. The Supreme Court of Indiana, in affirming the lower court's ruling, said:

"That appellant must be regarded as guilty of negligence under the circumstances in placing his son in control of the horse and sending him out upon the public highway is manifest. * * * Appellant, by engaging or employing his son to carry the message for him on the occasion in question, under the facts and the law applicable thereto, must be held, to that extent at least, to have created the relation of master and servant between him and his son, and is, under the third paragraph of the complaint, responsible in damages for injuries resulting from the inability of the son to properly control or manage the horse * * *." 80 N.E. at 146.

We admit, therefore, that Indiana accepted the negligent-hiring theory under the facts as presented in the case. Plaintiffs would go further and have us treat this as a mandate from the courts of Indiana to allow such a pleading in all employer-employee cases. In view of the history of this theory set out above, we disagree that any such intention can be read into the action taken in the *Broadstreet* case.

We find that the *Broadstreet* case fits easily into the class of "special situations" which we have discussed briefly above. The act of the father in directing his son to take on a task which was beyond his capability to fulfill is the true basis for liability, and parallels the facts of Womack v. Preach, supra. Like *Womack*, it would be difficult to find under these facts that the boy himself was guilty of negligence at the time of the injury. It presents a situation wherein that theory is given independent significance.

The decision, in other words, in no way exceeds the generally accepted bounds within which the negligent-hiring theory operates.

### III

To ascribe an intent to the courts of Indiana to permit a negligent-hiring count in the action presently before us constitutes an undue extension of *Broadstreet*, and we refuse to do so, until they rule otherwise. We believe, however, that were this question to be presented to the highest court of that State, a decision limiting its application would be forthcoming. The allegations made here present a clear example of why this is so.

The plaintiffs add nothing substantive to their claim for relief against the defendants through their tendered amendment. Under the original complaint the plaintiffs sought to recover for injuries proximately caused by the negligence of the truck driver, which negligence is imputed to the employer by reason of the agency relationship. Under their amendment plaintiffs still must prove that the injuries were caused by the negligence of the driver, but add to their burden proof that the employer failed to exercise care in hiring him. It is, as a matter of law, wholly unnecessary to plaintiffs' right to recover.

The status of the pleadings in this case more strongly dictate against allowing the amendment. It was earlier emphasized that the defendants in their answer to the original complaint admitted that at the time of the collision the truck driver was acting within the scope of his employment. This in effect so narrowed the issues as to exclude any question of agency upon the trial of the case. Plaintiffs by their amendment seek to re-inject the agency issue under the guise of negligence in hiring which adds to the burden of proof while prejudicing the defendant's case on the issue of the driver's negligence at the time of the accident.[11] Under the original pleadings

---

11. As has already been mentioned, the rule is well established that evidence of prior acts of negligence is inadmissible as being both irrelevant and prejudicial to the defendant's case. See note 4 above.

we faced an ordinary negligent driving law suit, and no good reason exists for complicating it further.

Other reasons exist for denying the amendment. First, it alleges that the truck-driver remained in the employ of the defendant-employers when "they knew or in the exercise of due care should have known he had been a negligent and unsafe driver of a tractor-trailer in the past." Under such a pleading the jury is faced with the awesome task of deciding whether each of the previous incidents alleged by plaintiffs to have been negligently caused by the driver was in fact negligence on his part. The driver may always contend that it was unavoidable, and might care to introduce independent testimony to that effect. Such extraneous issues could rapidly multiply and obscure the central issues of the case.

Furthermore, while it may be admitted that an employer has some duty to use due care in hiring drivers, it cannot be expected of him to make a determination whether a driver has been negligent, or was merely the victim of an unavoidable accident. A policy which requires the weeding out of "negligent" drivers fosters overwhelming responsibilities on employers which could not, it is suggested, often be met.

Finally, the law of negligence is concerned with the occasional failure to exercise reasonable and ordinary care. While such failure may subject a person to financial liability, it was never meant to penalize the wrongdoer. If an employer were subject to liability for negligence in hiring a negligent driver, he would be unwise to retain *or* employ any driver who had been involved in an accident. This rule of law would thus encourage a practice of refusing to hire drivers with a prior accident record, which not only penalizes the employer, but also all those drivers who, because of some earlier failing, would be unable to find work. The law has never been so harsh to the negligent.

The plaintiffs make a final effort to bring this case within the scope of *Broadstreet*, or, in our terms, within the class of special situations previously mentioned, by asserting that the employer owes a special duty to the public when he places another in charge of a dangerous instrumentality. In *Broadstreet* it was an uncontrollable horse. Here, plaintiffs claim, it is a motor vehicle. However, to our mind it is too late in this modern day to contend that trucks or automobiles in ordinary condition are dangerous instrumentalities. They constitute an all-too-common fact of every-day life to be so categorized.

## IV

We conclude, therefore, that the State of Indiana has not passed upon the precise issue before this Court, and if it did, it would refuse to allow the amendment. No court which has recognized the limited application of the negligent-hiring theory has gone so far as plaintiffs urge we should do here. The *Broadstreet* case, which we recognize to be the law of Indiana, is easily reconciled with our decision. We make no attempt to define the limits to which that case may be extended; we only hold that the facts before us were never intended by the State of Indiana to be within its reach, unless and until its courts rule otherwise.

Therefore, it is the order of this court that plaintiffs' motion to amend their complaint be, and the same hereby is, denied.