STANLEY A. TINDALL AND THOMAS L. RYAN, ADMINISTRATOR OF THE ESTATE OF ROBERT H. SLUSHER, DECEASED v. SYLVESTER ENDERLE AND FALLS TAP, INC. AN INDIANA CORPORATION.

[No. 3-1173A143. Filed December 19, 1974. Rehearing denied January 21, 1975. Transfer denied November 18, 1975.]

*Thomas L. Ryan, Daniel A. Roby,* of Fort Wayne, for appellants.

*William F. McNagny,* of Fort Wayne, *Phil M. McNagny, Jr.,* of Columbia City, for appellees.

STATON, J.—Stanley A. Tindall and Robert H. Slusher were shot at the Falls Tap Tavern by Sylvester Enderle, an em-

ployee and majority stockholder of the tavern corporation, Falls Tap, Inc. Slusher died from his gunshot wounds. His administrator, Thomas L. Ryan, and Stanley A. Tindall brought separate actions for wrongful death and negligence against Enderle and Falls Tap, Inc. which were later consolidated.

In the pre-trial order, Enderle and Falls Tap, Inc. stipulated that Enderle had fired the shots injuring Tindall and Slusher while acting in the scope of his employment. Falls Tap, Inc. further stipulated that it had prior corporate knowledge of Enderle's access to the revolver used in the shooting.

A motion in limine filed by Enderle and Falls Tap, Inc. sought to exclude any testimony which would refer to prior assaults upon patrons by Enderle that were not related directly to the consolidated action. The motion specifically urged the exclusion of instances involving Slusher's wife, Samuel Adkins, and Paul Kleinrichert. With the exception of Slusher's wife, the motion in limine was granted by the trial court.

A jury returned a verdict for Enderle and Falls Tap, Inc. Ryan and Tindall's Motion to Correct Errors raises this issue on appeal for our review:

Did the trial court commit reversible error when it sustained the motion in limine?

We have examined the motion in limine granted by the trial court and the theories upon which the consolidated action is based. We conclude that the trial court did not commit reversible error, and we affirm.

## I.

### Motions in Limine

Motions in limine have only recently been recognized as a fundamental part of the Indiana jury trial practice. See *Burrus* v. *Silhavy* (1973), 155 Ind. App. 558, 293 N.E.2d 794; *Baldwin* v. *Inter City Contractors Serv., Inc.* (1973), 156 Ind. App. 497, 297 N.E.2d 831. As

a necessary adjunct to the trial court's inherent power to admit and exclude evidence, motions in limine function primarily to exclude evidence which is prejudicial.

Stanley Tindall and Thomas Ryan, as administrator of the Estate of Robert Slusher, sought to introduce prior assault evidence in support of their cause of action alleging that Falls Tap, Inc. was negligent in employing and retaining Enderle in its employ after obtaining corporate knowledge of his violent propensities. They contend that the trial court committed reversible error by granting the motion in limine which excluded the prior assault evidence.

We focus our review on the extent to which this State recognizes a separate tort for the negligent hiring of an employee. It is clear that the rules of evidence ordinarily prohibit the introduction of testimony concerning prior similar but unconnected transactions in an attempt to establish negligence in a subsequent act. *Pittsburg, Ft. Wayne and Chicago Ry. Co. v. Ruby* (1871), 38 Ind. 294, 316, WIGMORE ON EVIDENCE § 199 (1940) and McCORMICK ON EVIDENCE § 188 (1972). Evidence offered in this context is most often prejudicial and presents a proper situation for the use of a motion in limine. However, evidence of prior similar actions committed by an employee are often admissible to establish the employer's actual or constructive knowledge of the employee's propensity to commit a later act of negligence or violence as a basis for an action which asserts the negligent hiring or retention of such a person. *See Pittsburg, Ft. Wayne and Chicago Ry. Co. v. Ruby, supra; Broadstreet v. Hall* (1907), 168 Ind. 192, 80 N.E. 145; *Indiana Union Traction Co. v. Pring* (1912), 50 Ind. App. 566, 96 N.E. 180; WIGMORE ON EVIDENCE § 199 and §§ 249-50; McCORMICK ON EVIDENCE § 200.[1]

---

1. For a connected consideration dealing with the admissibility of employee's criminal records to charge an employer with the knowledge of violent propensities, *see* 48 ALR3d 359.

## II.

### Negligent Hiring

Tindall and Ryan contend that in granting the motion in limine submitted by Enderle and Falls Tap, Inc., the trial court erroneously frustrated their attempt to prove Falls Tap, Inc. negligent in the hiring and in the retention of Enderle, a theory which they contend is totally separate and distinct from their action in *respondeat superior*. We disagree.

The law conceives of many situations in which one is charged with a duty to anticipate and guard against the conduct of others. *See* PROSSER ON TORTS § 33 (1971). Such a duty may arise out of a relationship between the parties such as an invitor and business invitee.[2] *See* PROSSER ON TORTS §§ 61 and 69 (1971). The RESTATEMENT (SECOND) OF AGENCY § 213 (1957) and its attendant comments indicate the tenor of the duty owed by an employer to his patrons concerning the negligent or reckless acts of his employees:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
* * *
(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

"*Comment:*

"a. The rule stated in this Section is not based upon any rule of the law of principal and agent or of master and

---

2. For a comparable situation dealing with the duty owed by a landlord to his tenants concerning the conduct of a resident manager, *see* *Parr* v. *McDade* (1974), 161 Ind. App. 106, 314 N.E.2d 768. For the historical perspective of the type of duty here at issue, *see* 40 ALR 1214, 1215, *et seq.*; 14 ALR 1041; 34 ALR2d 372, 390, *et seq.* The general duty here at issue arises from the duty imposed upon an employer who invites the public to his business to use care in the choice of employees expected to deal with customers.

servant. . . . Liability exists only if all the requirements of an action of tort for negligence exist. . . .

\* \* \*

"d. *Agent dangerous.* The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. . . .

". . . [I]f a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. . . .

\* \* \*

"Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. . . ."[3]

Indiana law recognizes at least a form of a separate cause of action based upon the negligent hiring of an employee. Both parties to this appeal rely heavily upon the early decision of *Broadstreet* v. *Hall, supra.* In *Broadstreet,* the Supreme Court of Indiana affirmed a decision holding a father liable for negligently employing his son to deliver a message on horseback. The father was found negligent in placing his son in charge of a horse when he knew or should have known of his son's history of recklessness on horseback and of his son's inability to properly manage a horse. *Broadstreet* v. *Hall* is arguably distinguishable from the case before us if viewed as a decision assessing liability for the negligent entrustment of a horse to an incompetent rider. However, the Court made no such distinction in its opinion and the later case of *Indiana Union Traction Co.* v. *Pring, supra,*

---

3. The RESTATEMENT (SECOND) OF TORTS §§ 315 and 317 concern this same general duty in a tort context. Section 317 discusses the duty owed by a master to exercise reasonable care to control his servant while the servant is acting *outside* the scope of his employment in preventing him from intentionally harming others. *See Parr* v. *McDade* (1974), 161 Ind. App. 106, 314 N.E.2d 768. For exemplary applications of RESTATEMENT (SECOND) OF AGENCY § 213 (1957) to cases framed in terms of master-servant, *see Monty* v. *Orlandi* (1959), 169 Cal. App. 2d 620, 337 P.2d 861 and *Dempsey* v. *Walso Bureau, Inc.* (1968), 431 Pa. 562, 246 A.2d 418.

indicates that this Court has not so limited its holding. Therefore, we view *Broadstreet* v. *Hall, supra,* within the context asserted. See also *Moskins Stores, Inc.* v. *DeHart* (1940), 217 Ind. 622, 29 N.E.2d 948.[4]

In answering an attack upon the introduction of evidence concerning the son's reputation for recklessness in *Broadstreet* v. *Hall, supra,* 168 Ind. at 204, 80 N.E. at 149, the Court stated:

> "The evidence in question as to the son's reputation was admissible to charge appellant with knowledge or notice of his son's careless and reckless manner of riding and controlling horses, and therefore, of his incompetency, for that reason, to be entrusted with the control and management of the horse at the time appellant sent him upon the errand . . . in question."

More recently, the United States District Court for the Northern District of Indiana held that the negligent hiring theory espoused in *Broadstreet* v. *Hall, supra,* was of limited scope, applicable to only "special" situations. *See Lange* v. *B & P Motor Express, Inc.* (1966), 257 F.Supp. 319. In *Lange, supra,* the Court was faced with a problem similar to that before us. In both cases, the employer stipulated that the employee he had hired was acting within the scope of his employment. As in *Lange,* we must determine whether the law of Indiana permits a separate theory of action based upon the negligent hiring of an employee in addition to the theory of *respondeat superior.* We concur with the result reached by the Court in *Lange, supra.*

In analyzing the case law recognizing the tort of negligent hiring of an employee, we feel compelled to observe that the import of this "separate" cause of action generally arises only when an agent, servant or employee steps beyond the recognized scope of his employment to commit a tortious injury upon a third party. *See* 34

4. For examples of the modern day version of the negligent entrustment theory based upon the automobile as a means of transportation, see *Thompson* v. *Havard* (1970), 285 Ala. 718, 235 So.2d 853; *Breeding* v. *Massey* (8th Cir. 1967), 378 F.2d 171 (interpreting Arkansas law).

ALR2d 372; 53 AM. JUR. 2d *Master-Servant* §§ 422 and 458. (1970).[5] Although Indiana law recognizes a separate cause of action for the negligent hiring of an employee, that theory is of no value where an employer has stipulated that his employee was within the scope of his employment.[6] The doctrine of *respondeat superior* provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment. *Lange* v. *B & P Motor Express, supra.* Proof of negligence by the employee on the particular occasion at issue is a common element to the theories of *respondeat superior* and negligent hiring. Under the theory of *respondeat superior*, however, when the employer has stipulated that the employee was acting within the scope of his employment in committing the act, upon proof of negligence and damages, plaintiff has successfully carried his burden of proof against the negligent employee's employer. Proof of the additional elements of negligent hiring under such circumstances is not relevant to the issues in dispute, is wasteful of the court's time and may be unnecessarily confusing to a jury. The sole possible advantage to the pursuit of a negligent hiring theory in cases such as that before us would be the potential assessment of punitive damages. *See* RESTATEMENT (SECOND) OF AGENCY § 217

---

5. The case law gleaned from these and other sources rarely differentiates between the joint or separate applicability of theories of *respondeat superior* and negligent hiring. *Compare Sixty-Six, Inc.* v. *Finley* (1969), Fla. App., 224 So.2d 381; *Monty* v. *Orlandi* (1959), 169 Cal. App. 2d 620, 337 P.2d 861; *Kendall* v. *Gore Properties, Inc.* (1956), 98 U.S.App.D.C. 378, 236 F.2d 673; *Bradley* v. *Stevens* (1951), 329 Mich. 566, 46 N.W.2d 382; with *Longo* v. *Tabasso* (1951), Ohio App., 62 Ohio Law Abst. 199, 106 N.E.2d 587; *Murray* v. *Modoc State Bank* (1957), 181 Kan. 642, 313 P.2d 304; *Stricklin* v. *Parsons Stockyard Co.* (1964), 192 Kan. 360, 388 P.2d 824. However, those cases which do distinguish the theories indicate that the applicability of the doctrine of *respondeat superior*, here by stipulation, disposes of any need to rely upon the negligent hiring theory.

6. We do not decide what the procedure will be when the alternative theories of *respondeat superior* and negligent hiring are both raised and a defendant employer refuses to stipulate that his employee acted within the scope of his employment in committing the act at issue.

(c) (1957) ; *Erfert* v. *Bush* (1966), 51 Misc. 2d 248, 272 N.Y.S.2d 862. Nevertheless, the record before us does not permit even this consideration. The complaints made no mention of punitive damages.

Therefore, the trial court was correct in granting the motion in limine to exclude any reference to prior assaults committed by Enderle. Testimony touching upon those prior incidents would clearly have been prejudicial to Enderle and Falls Tap, Inc. *Burrus* v. *Silhavy; Baldwin* v. *Inter City Contractors Serv., Inc., supra.*

We affirm.

Hoffman, C.J. and Garrard, J., concur.

NOTE.—Reported at 320 N.E.2d 764.