

FILED

Aug 19 2019, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert D. King, Jr.
David R. Thompson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Christopher L. Riegler
Kimberly E. Schroder
Patricia B. Freije
Katz Korin Cunningham, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leslie D. Hayden,

*Appellant-Plaintiff,*

v.

Franciscan Alliance, Inc.,[1]

*Appellee-Defendant.*

August 19, 2019

Court of Appeals Case No.
18A-CT-1777

Appeal from the Marion Superior
Court

The Honorable Michael D. Keele,
Judge

Trial Court Cause No.
49D07-1511-CT-39310

**Mathias, Judge.**

[1] Franciscan Alliance, Inc. ("Franciscan") filed a motion for summary judgment on the issues of respondeat superior and negligent hiring and retention of an

---

[1] Brooke Collins and Jessica M. Hensley have not filed appellate briefs. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

employee on April 5, 2018. Marion Superior Court granted summary judgment for Franciscan on July 6, 2018. Leslie Hayden ("Hayden") now appeals, arguing there are issues of material fact that preclude summary judgment. We affirm.

## Facts and Procedural History

[2] On November 18, 2013, Hayden had x-rays taken at St. Francis Hospital's Radiology Department for a broken arm. Appellant's App. Vol. III, pp. 54–56. Two years later, in 2015, Jessica Hensley ("Hensley") texted a screenshot of Hayden's confidential medical records to Hayden's boyfriend, and posted the records on Facebook. *Id.* at 53; Appellant's App. Vol. I, p. 137. Hayden recalled that Brooke Collins ("Collins"), Hensley's best friend, worked as a registrar in the St. Francis Hospital Radiology Department, where Hayden received treatment in 2013. Appellant's App. Vol. III, p. 59. Hayden had a complex and acrimonious relationship with Hensley and Collins that dated back to high school. Appellant's App. Vol. I, pp. 125, 128, 149.

[3] Hayden contacted the hospital's Administrative Director of Compliance and Privacy in July 2015 to ask for an audit of her medical account. Appellant's App. Vol. III, pp. 57, 163. The hospital found that Collins's password was used to access Hayden's account on November 29, 2013, eleven days after Hayden received treatment for her broken arm. Appellant's App. Vol. I, pp. 81–82. Hayden was not a patient of Franciscan on November 29 when Collins's password was used to access her account. Franciscan concluded that Collins's access was unauthorized and improper. Appellant's App. Vol. III, p. 191.

Collins has since admitted to accessing Hayden's private patient information on November 29, 2013. Appellant's App. Vol. IV, p. 84.

[4] On November 25, 2015, Hayden brought suit against Hensley, Collins, and Franciscan. A fourth defendant, Southside OB-GYN, P.C. was also named but later dismissed by stipulation. Appellant's App. Vol. I, p. 11. Hayden alleged (I) respondeat superior against Franciscan for the acts of Collins, (II) negligence against Franciscan in failing to have appropriate prophylactic structures and systems in place to safeguard private patient information, (III) Health Insurance Portability Accountability Act ("HIPAA") violations against St. Francis, and (IV) negligence, invasion of privacy & public disclosure of private facts against Collins and Hensley for accessing, reviewing, and disseminating Hayden's private and confidential medical records.

[5] Collins was hired as a registrar at St. Francis Hospital in April 2011. Appellant's Confidential App. Vol. II, p. 72. The job required her to "get patient information, register them, verify their insurance, verify their personal information, and then enter it in the computer[.]" *Id.* Collins was subject to a background check, which showed that Collins had been arrested but not convicted for felony theft and misdemeanor conversion while in high school. Appellant's App. Vol. III, p. 175–76. Collins had stolen medicine from Walmart and had withdrawn $400 from her father's bank account. *Id.* at 132–37. Charges in both instances were dismissed. *Id.* at 137. Franciscan did not ask Collins about her criminal history in her initial interview, nor in a re-interview when she was transferred to St. Francis's south campus. *Id.* at 139, 144, 155.

Cory Baute ("Baute"), Franciscan's Chief HR and Support Services Executive for Franciscan Health's Central Indiana Division, signed an affidavit stating that nothing in Collins's application or background would or should have precluded her employment as a registrar at St. Francis. Appellant's Confidential App. Vol. II, p. 97. Baute did not work for Franciscan in 2011 when Collins was hired but testified that the hiring practices in 2011 were "generally the same as they are now." Appellant's App. Vol. III, p. 180.

Franciscan also presented Linda Fletcher ("Fletcher"), the Hospital's Information Security Officer, to testify about HIPAA compliance, patient privacy, and the security of electronic medical records. Appellant's App. Vol. III, p. 119. Fletcher testified that background checks assist with HIPAA compliance and are one of the controls Franciscan uses to ensure "staff are appropriate to handle the [protected health] information." *Id*. at 121. When asked whether certain backgrounds are disqualifying, Fletcher responded, "That would be handled at the St. Francis level within HR. . . they run the background checks and they're responsible for the criteria used to qualify and disqualify people." *Id*. at 122. She did not know what criteria the HR departments use but testified that disqualifying backgrounds would presumably include any abuse of private health information, criminal background, and tendency for fraud and abuse. *Id*. at 122–23. When asked whether a history of theft would be disqualifying, Fletcher responded, "It depends on the theft, I guess." *Id*. at 124.

[8]     Once hired, Collins was required to undergo HIPAA training. After completing training, Collins signed the General Orientation Agreement, which provided that she had "received and underst[ood] the information regarding the Health Insurance Portability and Accountability Act of 1996 (HIPAA) regulations and hospital[] policies and procedures regarding Safety, Security, PI, and Patient Rights as presented during and contained in the General Orientation Handbook." Appellant's Confidential App. Vol. II, p. 80. She also signed an acknowledgment affirming her understanding that she may only "use and access information that is needed to perform [her] job duties, and inappropriate use or disclosure of information on [her] part may result in legal action, including personal liability." *Id*. at 81.

[9]     Collins also received regular trainings, including classes on HIPAA compliance, patient privacy and security, and appropriate access to and usage of medical records, and periodically took tests about patient privacy. *Id*. at 83. Supervisors were near Collins's work area and made regular rounds to check on the registrars. *Id*. Annual audits analyzed the online activities of the registrars. *Id*. Collins testified that she had been trained and educated by Franciscan and was aware of appropriate and inappropriate access of patient records. Appellant's App. Vol. III, p. 158. She also knew that accessing and forwarding medical records to outside parties was against hospital policy. *Id*. at 159. Collins voluntarily resigned in February 2014. Appellant's Confidential App. Vol. II, p. 72.

Collins filed a motion for summary judgment on September 1, 2017 in which Franciscan joined. The court granted partial summary judgment on Count III, finding that Hayden had no private right of action under HIPAA. Franciscan filed a subsequent motion for summary judgment on April 5, 2018. Collins filed an amended answer and response in order to admit accessing Hayden's private patient information on November 29, 2013. Franciscan asked that Collins's amended answer and responses be considered as part of its pending motion for summary judgment. The Court granted the motion for summary judgment. Hayden now appeals.

## Standard of Review

A trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Altevogt v. Brand*, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012) (citing Ind. Trial Rule 56(C)). The trial court's grant of a motion for summary judgment is "cloaked with a presumption of validity." *Id*. In reviewing a trial court's summary judgment motion, an appellate court applies a de novo standard of review. *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1259 (Ind. 2014).

Here, the trial court made findings of fact and conclusions of law in support of its entry of summary judgment. We are not bound by the trial court's findings and conclusions. *Altevogt*, 963 N.E.2d at 1150.

# Discussion and Decision

[13] Hayden argues that the trial court improperly granted summary judgment to Franciscan. Hayden raises four issues on appeal that we consolidate and restate as two issues. First, she argues that summary judgment should not have been granted on Franciscan's respondeat superior claim. Second, she argues the trial court erroneously granted summary judgment to Franciscan on negligent hiring, retention, monitoring, supervision, and training.

## I. Respondeat Superior

[14] Hayden first claims that Franciscan is liable for Collins's actions under respondeat superior. Appellant's Br. at 23. An employer is liable for an employee's tortious acts under respondeat superior only if those acts occurred within the scope of employment. *Cox v. Evansville Police Department,* 107 N.E.3d 453, 460 (Ind. 2018). An employee acts within the scope of employment when an act furthers the employer's business to an appreciable extent or is incidental to authorized conduct. *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014). An act is incidental to authorized conduct when it is "subordinate to or pertinent to an act which the [employee] is employed to perform[.]" *Id.* (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003)).

[15] Employers are not responsible for acts that are unauthorized, or acts done "on the employee's own initiative, [] with no intention to perform it as part of or incident to the service for which he is employed." *Doe v. Lafayette School Corp.*, 846 N.E.2d 691, 702 (Ind. Ct. App. 2006), *abrogated on other grounds by State*

*Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654 (Ind. 2008) (quoting *Stropes v. Heritage House Childrens Center*, 547 N.E.2d 244, 247 (Ind. 1989)). An employer may still be liable when an employee acts partially in self-interest and partially in the employer's interest. *Id.* at 701–02. The scope of employment "may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Cox*, 107 N.E.3d at 461.

Hayden cites to *Walgreen Co. v. Hinchy*, where the court denied summary judgment on the issue of vicarious liability when a pharmacist reviewed and shared a customer's prescription profile with a third party. The pharmacist was "authorized to use the Walgreen computer system and printer, handle prescriptions for Walgreen customers, look up customer information on the Walgreen computer system, review patient prescription histories, and make prescription-related printouts." *Hinchy*, 21 N.E.3d at 108. The pharmacist was at work and using Walgreen equipment when the actions occurred, and much of her conduct was of the same general nature as her ordinary job duties authorized by her employer. Even though some of her actions were unauthorized, the question of vicarious liability was a question for the jury.[2]

---

[2] Hayden's additional citation to *Cox*, 107 N.E.3d 453, is unhelpful. The Indiana Supreme Court specifically noted the "unique institutional prerogatives of [] police employment" in deciding that the question of vicarious liability for the sexual assault of a woman in police custody was a question for the jury. 107 N.E.3d at 464. *Cox* expanded liability because police officers wield "broad authority and intimidating power" that

[17] Franciscan cites to two cases in contrast to *Hinchy*. First, Franciscan points to *Doe v. Lafayette School Corp.*, where the court affirmed summary judgment for a school corporation on the issue of vicarious liability for a teacher's sexual molestation of a student. 846 N.E.2d 691. The teacher sent emails to the student during and after school hours using his school-provided laptop. *Id.* at 695. His actions were outside the scope of employment because he was not authorized to send personal emails to students or to pursue a romantic relationship with a student. *Id.* at 702. The teacher's actions were "fueled entirely by self-interest in a romantic relationship with [the student]" rather than "incident to any service provided by [the school corporation.]" *Id.*

[18] Franciscan also directs the court to *Robbins v. Trustees of Indiana University*, 45 N.E.3d 1 (Ind. Ct. App. 2015) where the court affirmed summary judgment for a hospital on the issue of vicarious liability. The hospital was not vicariously liable when a nurse accessed and posted confidential medical records on an internet blog. The nurse signed a confidentiality agreement at the start of her employment, which provided the nurse would:

> …only access, use (read, add, change, or delete), or disclose information for which [she had] a business reason and [was] authorized to do so. At no time [would she] access, use, or disclose confidential or sensitive information to any person or

comes with an "inherent risk of abuse." *Id.* at 459, 463. The public policy behind the *Cox* extension of the doctrine of respondeat superior for law enforcement officials' conduct does not exist here.

third party for a personal, unauthorized, unethical, or illegal reason.

*Id.* at 4. Although the nurse was authorized to access patient information, the court found that the existence of the confidentiality agreement meant she was "expressly *not authorized* to access, use, or disclose the information for personal, unauthorized, unethical, or illegal reasons." *Id.* at 10 (emphasis in original). The court also noted that the patient had never been treated in the nurse's department. *Id.* at 5. Her actions were not incident to any service provided by her employer but were "motivated entirely by self-interest related to a personal relationship" with the patient, and thus the nurse's actions were outside the scope of her employment. *Id.* at 11. Summary judgment on the issue of vicarious liability was appropriate.

[19] Hayden's case is more akin to *Doe* and *Robbins* rather than to *Hinchy*. Although Collins was authorized to use Franciscan's computer to look up patient records, she was not authorized to do so for personal reasons. As in *Robbins*, where the confidentiality agreement expressly prohibited the nurse form accessing and/or disclosing patient records for personal reasons, Collins signed an agreement at the onset of her employment that stated she could only "use and access information that is needed to perform [her] job duties, and inappropriate use or disclosure of information on [her] part may result in legal action, including personal liability." Appellant's Confidential App. Vol. II, p. 81. There is no evidence that the pharmacist in *Hinchy* signed a confidentiality agreement.

[20] Collins accessed Hayden's records eleven days after Hayden's visit to the Radiology Department. Hayden was not a patient of Franciscan on November 28 or 29, 2013. Collins thus had no legitimate business need to access Hayden's medical records on November 29, 2013 because Collins did not need to look her up for an appointment or to prepare patient records for November 29, 2013. Collins's access to the medical records was expressly not authorized; the information was not needed to perform her job duties and thus was not sanctioned. In addition, Hayden's comparison to *Hinchy* is ultimately untenable because there is no evidence that the pharmacist in *Hinchy* signed a confidentiality agreement like the nurse in *Robbins* or Collins[3].

[21] We are also unpersuaded by Hayden's argument that a genuine issue of material fact exists because Collins claims that she did not access and disseminate Hayden's medical records. Appellant's Br. at 34. In her amended answer, Collins admitted accessing Hayden's medical records on November 29, 2013. Appellant's App. Vol. IV pp. 80, 84. Collins's factual admission cannot be withdrawn by an earlier statement in a deposition. A judicial admission is "an admission in a current pleading or made during the course of trial; it is conclusive upon the party making it and relieves the opposing party of the duty

---

[3] Hayden also argues that *Robbins* is inapplicable because the patient in *Robbins* was not a patient of the nurse's department, the nurse admitted she was not involved in any way with providing any healthcare or treatment to the patient or her children, and that the nurse pleaded guilty to a related criminal offense. Appellant's Br. pp. 33–36. In contrast, Hayden was a patient of Collins's department, and Franciscan has not provided any evidence on either of the other two points. However, the factual differences between this case and *Robbins* do not affect our reliance on the legal analysis in *Robbins* as it relates to whether Hayden was acting within the scope of her employment and had signed a confidentiality agreement.

to present evidence on that issue." *Weinberger v. Boyer*, 956 N.E.2d 1095, 1105 (Ind. Ct. App. 2011), *trans. denied*. An admission in a pleading is conclusive. *Id*. Collins admitted in her answer that she accessed Hayden's medical records; this fact is now settled and cannot be used to survive summary judgment.

[22] The trial court properly granted summary judgment to Franciscan on the issue of respondeat superior. Franciscan established that Collins accessed the medical records for non-employment-related reasons, in direct violation of the confidentiality agreement she signed at the onset of her employment with Franciscan. Hayden failed to designate any evidence to the contrary. For these reasons, Franciscan is entitled to summary judgment as a matter of law.

## II. Negligence

[23] Hayden claims that Franciscan is liable for negligently hiring and retaining, training, and monitoring and supervising Collins. Negligence claims have three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty and (3) injury to the plaintiff proximately caused by the defendant's breach. *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009).

### A. Hiring and Retention

[24] Indiana courts recognize a tort of negligent hiring and retention of an employee. *Konkle v. Henson*, 672 N.E.2d 450, 454 (Ind. Ct. App. 1996). Indiana has adopted the Restatement (Second) of Torts section 317, which provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as

to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control.

[25] It is undisputed that Collins was an employee of Franciscan and was on Franciscan's premises when the unauthorized access occurred. At summary judgment, it was Franciscan's burden to show it had no reason to know of its need to control Collins. *See Hudgins v. Bemish*, 64 N.E.3d 923, 933–934 (Ind. Ct. App. 2016). In an action for the negligent retention of an employee, evidence of prior similar actions committed by an employee is often admissible to establish the employer's actual or constructive knowledge of the employee's propensity to commit a later act. *Frye v. Am. Painting Co.*, 642 NE.2d 995, 999 (Ind. Ct App. 1994) (citing *Tindall v. Enderle*, 162 Ind. App. 524, 527, 320 N.E.2d 764, 767 (Ind. Ct. App. 1974)).

[26] Franciscan points to *Robbins*, where the nurse's background check yielded that she had a misdemeanor battery conviction and dismissed charges for class A misdemeanor criminal mischief, driving while suspended, and a probation violation. 45 N.E.3d 1 at 4. This court held that the nurse's violation of medical confidentiality "did not constitute a recurrence of criminal behavior for which [she] had earlier been convicted. Specifically, there were no prior reports of [her] accessing and publishing any other patient's confidential medical

records." *Id*. at 12. Under these circumstances, the patient was not a reasonably foreseeable victim and the nurse's posting of information was not a reasonably foreseeable harm.[4] *Id*.

[27] The present case is similar to *Robbins*. Collins was vetted through her application for employment, interview, and criminal background check. Collins's background check indicated she had two arrests, but the charges in both cases were dismissed. Her previous arrests were for stealing medicine from Walmart and stealing $400 from her father six years before her employment with Franciscan. She had no history of accessing and publishing confidential medical records or other sensitive information.

[28] Cory Baute ("Baute"), Franciscan's Human Resources manager, testified that nothing in Collins's background would raise a red flag or prevent her from being hired. Hayden argues that Baute's affidavit is defective because he could not be "100 percent certain" about the hiring processes utilized in 2011 because he was not at Franciscan at the time. Appellant's Br. at 43; Appellant's App.

---

[4] Hayden's attempts to compare *Frye* to the present case are unavailing. In *Frye*, the painter committed his first crime *while already employed* at the painting company and fled the scene of the first crime in the painting company's van; the painting company then provided him with representation and legal advice. 642 NE.2d 995 at 997. He then committed an almost identical crime at the home of a customer. *Id*. The questions of whether the painter posed a threat to customers and whether the company breached its duty to its customers by retaining the painter was a question for the jury. *Id.* at 999. In contrast, Collins's arrests happened *six years* before she was hired at Franciscan. Her previous crimes were instances of theft, not of accessing private patient information.

Vol. III, p. 180. However, Baute did testify that the processes were "generally the same as they are now." Appellant's App. Vol. III, p. 180.

[29] Hayden attempts to show that there remain issues of material fact by contrasting the testimony of Baute with the testimony of Linda Fletcher ("Fletcher"), Franciscan's patient privacy director. Appellant's Br. at 45–46. Fletcher testified that a criminal background would be a disqualifying background for HIPAA compliance. Appellant's App. Vol. III, pp. 123–24. Hayden thus argues that Collins's hiring and retention was negligent due to Collins's prior arrests.

[30] This is an inaccurate characterization of Fletcher's testimony. Fletcher testified that background checks assist with HIPAA compliance but that she did not know what a disqualifying background would be, because background checks are "handled at the St. Francis level within HR…they run the background checks and they're responsible for the criteria used to qualify and disqualify people." *Id*. at 122. Fletcher herself stated that she was not an expert on background checks; HR employees such as Baute are. Fletcher's testimony thus does not contradict Baute's expert testimony.

[31] Franciscan designated evidence establishing that Franciscan did not negligently hire and retain Collins. Hayden failed to designate evidence sufficient to create a genuine issue of material fact. Summary judgment was therefore appropriate on the issue of negligent hiring and retention.

## B.  Training

[32]  Next, Hayden argues that genuine issues of material fact preclude the entry of summary judgment on the issue of negligent training. We disagree.

[33]  Sharla D. Rhodes ("Rhodes"), Franciscan's Director of Patient Access, testified that Collins went through orientation when she was hired at the hospital, and that her orientation included training on patient privacy and confidentiality of medical records. Appellant's Confidential App. Vol. II, p. 83. She further testified that Collins received regular training throughout her employment, including classes on patient privacy and appropriate access to medical records. *Id*. Collins herself testified that she had been trained and educated by the Hospital:

> Q: As a result of your training and education provided to you as an employee of St. Francis, were you aware of appropriate and inappropriate access, viewing and use of information contained within patient medical records?
>
> A: Yes.
>
> Q: Okay. And so if you accessed records you weren't supposed to, you knew that was wrong?
>
> A: Yes.

Appellant's App. Vol. III, p. 158. Construing the facts most favorably for the non-moving party, the facts show that Franciscan provides training to employees on HIPAA, patient privacy, and appropriate access to medical records at the onset of and throughout employment. These facts also

demonstrate that Collins knew in what instances access to medical records was appropriate and in what instances access was improper.

[34] Hayden failed to designate any evidence creating a genuine issue of material fact on the issue of negligent training. Summary judgment was therefore properly granted to Franciscan on this issue.

### C. Negligent monitoring and supervision

[35] Finally, Hayden argues that Franciscan failed to meet its burden to prove that Collins was properly monitored and supervised. In support of her argument, Hayden relies on the affidavit of Rhodes, Franciscan's Director of Patient Access.

[36] Testimony shows that supervisors were near Collins's work area and made regular rounds checking on the status of the registrars. Appellant's Confidential App. Vol. II, p. 83; Appellant's App. Vol. III pp. 151–52. Supervisors were able to monitor the computers used by each registrar and perform annual audits that analyzed the online activities of the registrars. Appellant's Confidential App. Vol. II, p. 83. Collins herself testified that "there was always a manager there" and that she believed that "all managers could see what the employees were doing." Appellant's App. Vol. III, pp. 151–52. Franciscan designated evidence that they did not breach a duty to their patients.[5]

---

[5] Hayden argues that several statements in Rhodes's affidavit should have been struck. Hayden argues that Rhodes is not an expert because Rhodes identified herself as a "master gardener" rather than an

Hayden also argues that Rhodes's testimony does not establish that Franciscan properly supervised and managed employees because she could not specifically testify whether supervisors had been making rounds on November 29, 2013. This is an inaccurate characterization of Rhodes's testimony. Rhodes testified that Collins was not supervised differently than any other registrar at Franciscan, and she was properly supervised based on Franciscan's standards. *Id.* at 112. Rhodes clarified that the registrar's role is "very independent. There's not a reason for somebody to stand over them all the time unless they ask for assistance or they need support with something[.]" *Id.* at 91. Rhodes's affidavit and testimony are not deficient.

## Conclusion

Hayden failed to establish any genuine issue of material fact. The trial court appropriately granted summary judgment to Franciscan on the issues of respondeat superior and negligence.

Affirmed.


May, J., and Brown, J., concur.

---

expert in training individuals in privacy and protected health information. *Id.* at 71–73, 107–108. However, Rhodes testified that she has expertise in training registrars and that she helps others learn the Epic System. *Id.* at 107–08.  She has applicable training to be considered an expert and to satisfy Indiana Evidence Rule 702.