# 192    SUPREME COURT OF INDIANA,

## BROADSTREET v. HALL.

[No. 20,840.    Filed February 22, 1907.]

1. PLEADING. — *Complaint.—Negligence.—Sending Reckless Boy on Unruly Horse on Errand.—Notice.*—It is not necessary for a complaint against a father for negligence in sending his son, known to be a reckless rider, upon a horse known to be unruly, to show the father's notice of a propensity of such horse for running against carriages in the highway.    p. 196.

2. NEGLIGENCE.—*Reckless Riding.—Master and Servant.*—It is negligence for a father to send, upon the public highway, his young, weak and reckless-riding son upon an unruly horse to carry a message.    p. 197.

3. SAME.—*Proximate Cause.—Reckless Riding.*—A father's negligence in sending his weak, reckless-riding son upon an unruly horse upon the public highway to carry a message, is the proximate cause of personal injury to plaintiff caused by such son's running such horse into plaintiff's carriage.    p. 197.

4. SAME.—*Anticipation of Particular Injury.*—To constitute actionable negligence it is not necessary that the plaintiff should have anticipated the particular injury received.    p. 197.

5. MASTER AND SERVANT. — *Parent and Child. — Errands.*—The father sustains the relation of master to his child whom he sends with a business message to a customer in the country, and who injures a person upon the public highway.    p. 198.

6. NEGLIGENCE.—*Highways.—Use of.*—All persons have an equal right to use the public highways, but each person's use thereof must be consistent with the rights and safety of others using the same.    p. 199.

7. PARENT AND CHILD. — *Master and Servant. — Principal and Agent.—Torts of Child.—Liability.*—A parent, as such, is not liable for the torts of his child, but he may be liable in the relationship of master or principal.    p. 199.

8. SAME.—*Negligence.—Running Horse on Highway.—Evidence.*—Evidence showing that a father who sent his reckless boy to carry a message on the highway, and that such son recklessly whipped his horse to full speed causing it to run against plaintiff's buggy, thereby injuring plaintiff, supports a verdict for plaintiff.    p. 200.

9. APPEAL. — *Record. — Bill of Exceptions. — Contradictions. — Which Controls.*—Where the order-book entry and the bill of exceptions contradict each other, the order-book entry controls.    p. 202.

Broadstreet *v.* Hall—168 Ind. 192.

10. TRIAL.—*Verdict.—Transcribing.—Duties of Parties.—Appeal and Error.*—Where a verdict is alleged to be defective, it is the duty of the complaining party to have it literally copied into the order-book, and, failing in that, he cannot present the question on appeal, since the record showing the form of the verdict is conclusive on appeal. p. 202.

11. SAME.—*Instructions.—Redundant.—Refusal to Give.*—Where the jury is fully instructed, the trial court should refuse to give additional instructions. p. 203.

12. SAME.—*Instructions.—Limiting Evidence on Issues.*—An instruction that the jury should determine the contested question from all the evidence is not bad where such instruction later limits the evidence to that which is relevant to such question. p. 203.

13. EVIDENCE.—*Reckless Riding.—Notice.—Negligence.—Master and Servant.*—Evidence of prior reckless riding is admissible on the question of notice of the son's recklessness and incompetency, in an action for negligence against the father because of injuries received by the plaintiff by reason of a collision caused by such boy. p. 204.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Mary M. Hall against Alexander Broadstreet. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Moore Brothers, C. C. Matson* and *Crane & McCabe,* for appellant.

*S. A. Hays, C. E. Akers* and *N. A. Whitaker,* for appellee.

JORDAN, J.—Action by appellee to recover damages for personal injuries sustained. The cause was originally instituted and tried in the Putnam Circuit Court, wherein appellee recovered a judgment, which, on appeal to the Appellate Court, was reversed by reason of certain erroneous rulings of the trial court. *Broadstreet* v. *Hall* (1904), 32 Ind. App. 122. The venue of the action was subsequently changed to the Montgomery Circuit Court. The complaint upon which the cause was tried in the latter court consists of two paragraphs, the first and third. The

former, having been amended, is denominated the amended first paragraph of the complaint. The answer was the general denial. There was a trial by a jury. No evidence, however, was introduced by appellant. A verdict was returned in favor of appellee, assessing her damages at $1,500, and over appellant's motions for a *venire de novo* and a new trial judgment was rendered on the verdict. The denial of these motions and the overruling of the demurrer to the third paragraph of the complaint are the errors assigned and relied upon for reversal.

The amended first paragraph of the complaint abounds in repetitions and unnecessary averments. The following, however, may be said to be an epitome of the facts therein alleged. On April 15, 1899, Clyde Broadstreet, a minor of tender years, son of defendant, was living with his said father as a member of his family at the town of Cloverdale, Putnam county, Indiana. On that day the defendant employed his said son to convey a certain message from said town to Harrison Broadstreet, who resided two miles distant therefrom. For the purpose of carrying this message the defendant furnished and supplied his son with a horse, owned by him (the defendant), and this horse was ridden by the boy on that occasion. The horse in question was difficult to control, and, it is alleged, defendant's son was careless and negligent in managing and controlling the horse which defendant furnished him upon the occasion of carrying said message—all of which the defendant then and there well knew. Defendant's son, at the instance and command of his father, rode the horse in question for the purpose of carrying the message as commanded by his father to the person to whom it was directed. While in the performance of this service, and within the scope of his employment and agency, he rode the horse along a public highway upon which the plaintiff was lawfully traveling in a buggy. The paragraph further alleges that on said occasion the son, in the performance of the

aforesaid service for his father, negligently, carelessly, and recklessly rode and ran said horse along said highway over and against the buggy in which plaintiff was traveling, and thereby struck her and threw her out of the buggy upon the ground, by reason of which she was bruised, wounded, and permanently injured and damaged.

The facts alleged in the third paragraph may be summarized as follows: On April 15, 1899, defendant negligently ordered, commanded, and permitted his son, Clyde Broadstreet, of the age of nine years, who was residing with his father as a member of the family, to ride a horse owned by the defendant to carry a message for the defendant from the town of Cloverdale, Putnam county, Indiana, to Harrison Broadstreet, who resided about two miles distant from said town. Said Clyde Broadstreet was inexperienced in the management and control of horses, did not have the strength and skill to manage and control horses, and was reckless and careless in the management and control of horses—all of which was at the time known to the defendant. In pursuance of the order and command of the defendant, he started upon his said mission of conveying the message in question, and, while riding said horse furnished by his father along the public highway in a careless and reckless manner, he met the plaintiff, who was lawfully traveling in a buggy upon said highway. It is alleged that, by reason of said Clyde's inability, and want of strength and skill, to manage and control said horse on which he was riding, he ran the horse into and against the buggy in which plaintiff was then and there traveling on said highway, and thereby threw her out of said vehicle to the ground, by reason of which she was bruised and wounded to such an extent as to be permanently injured and damaged.

The evident theory of the first paragraph, as outlined by the facts, is that the relation of master and servant existed between appellant and his minor son at the time

of the accident in question, and that therefore, under a well-settled rule, appellant is responsible for the negligence of his said servant, to which the injury of appellee is imputed. This negligence, as shown, was committed by appellant's son and servant within the scope of the employment or service which he was performing at the time for his father.

The third paragraph proceeds upon the theory that the injuries received by appellee are due to the negligence of appellant, under the circumstances, in placing his minor son in the control and management of his horse upon the occasion and for the purpose in question, and allowing him to ride the horse along the public highway in the performance of the business or mission upon which he sent him. That, by reason of the boy's carelessness, youth, inexperience in the management of horses, and his want of strength and ability to govern the horse at the time in question, he ran into appellee's buggy and threw her to the ground, thereby injuring her, as alleged in the pleading.

The objection urged by appellant's counsel in respect to the insufficiency of the third paragraph of the complaint is that it was the wilful act of the horse which is

1. averred to have injured appellee, and that, inasmuch as the act is such as horses do not usually commit, the paragraph is bad, for the reason that there are no facts to show that the horse which appellee's son was riding at the time had any disposition or propensity to commit such act, and that the defendant had notice of such disposition. Counsel, however, certainly misapprehend the facts as they are averred in the third paragraph, for the injuries alleged to have been sustained by appellee are not attributed to the wilful act of the horse, but it is alleged that appellant, by reason of the youth of his son, his careless and reckless habits, and his want of strength and skill to manage and

control the horse in question, which horse, as averred, was difficult to manage and control—all of which facts were well known to appellant at the time—was, under the circumstances, guilty of negligence in placing his son in charge of the horse, and sending him out upon the public highway to convey the message to Harrison Broadstreet, as he was directed and commanded to do.

It appears that by reason of his inability to manage and control the horse, and by reason of the careless and reckless manner in which he rode the horse along the public highway upon which appellee was traveling, he collided with the buggy and thereby caused the injury of which appellee complains. That appellant must be regarded as guilty of negligence in placing his son in control of the horse and sending him out upon the public highway is manifest. In *Dunlap* v. *Wagner* (1882), 85 Ind. 529, 44 Am. Rep. 42, this court said: "We assume that horses require the management of an intelligent person, in reasonable control of his mental and physical powers, and this we do for the reason that all persons are presumed to know the natural and ordinary propensities and dispositions of such animals." It is apparent that the injury which appellee received was the natural and proximate result of appellant's alleged negligence. It is a maxim of the law that a person must be held to contemplate the probable consequences of his own act. It is true, however, that in cases of this kind the injury received by the complaining party must be such as the wrong-doer might reasonably have anticipated or foreseen, but it is not essential that it should be made to appear that the precise injury or accident which did occur could have been anticipated or foreseen. It will be sufficient if the injury resulting from the wrongful act is such as was usual and therefore might have been expected. *Dunlap* v. *Wagner, supra,* and authorities cited.

Appellant, by engaging his son to carry the message for him on the occasion in question, under the facts and the law applicable thereto, must be held, to that extent

5.    at least, to have created the relation of master and servant between him and his son, and is, under the third paragraph of the complaint, responsible in damages for injuries resulting from the inability of the son properly to control or manage the horse, or, under the first paragraph of the complaint, on account of the son's negligence in riding the horse along the public highway while engaged in the performance of the business of his father.    In support of these propositions, see the following:    Teagarden v. McLaughlin (1882), 86 Ind. 476, 44 Am. Rep. 332; Dunlap v. Wagner, supra; 1 Cooley, Torts (3d ed.), *122; Tiffany, Per. and Dom. Rel., §120; Schouler, Dom. Rel. (5th ed.), §263; Lashbrook v. Patten (1864), 62 Ky. 316; Wood, Master and Serv. (2d ed.), §§277, 282; 1 Thompson, Negligence (2d ed.), §529.

In Lashbrook v. Patten, supra, the minor son of the defendant, while driving a carriage conveying his two sisters to a picnic, negligently ran into and against the vehicle of the plaintiff, in which the latter was traveling, causing his horse to become frightened, to "run over" and break the carriage, and throw out plaintiff's daughter.    The carriage driven by the son on that occasion belonged to the father, as did the horse by which it was drawn, and the son and his sisters, who were in the carriage with him, were all members of his father's family, and the son was driving with the approbation of the father.    The court, in that case, held that the son must be regarded as in the employ of his father, and, therefore, at the time of the accident was the servant of the father, and the latter was liable in damages for the son's negligence upon the occasion in question.

Generally speaking, the law regards public highways as open alike to travel thereon by all persons who may desire

to exercise that right, subject, however, to all reasonable conditions and restrictions that may be imposed. *City of Terre Haute* v. *Kersey* (1902), 159 Ind. 300, 95 Am. St. 298. But whoever travels over and along a public highway must do so in such a manner and with such care as is consistent with the rights and safety of others traveling thereon, and a violation of this duty is regarded by the law as negligence. Appellant's counsel earnestly argue that in this case he is not liable because the father is not responsible for the torts of his minor child. But this is not the question with which we have to deal. It is true that a father is not responsible for the torts of his child, due to the negligence or wilful act of the latter, merely because of the relation existing between parent and child. The liability of the father does not depend upon this relation, but upon the relation of principal and agent, or master and servant, and is governed by the rules applicable to such relation. Or, in other words, the law holds the father liable only on the same grounds that he would be responsible for the wrong of any other person; that is, that he directed or ratified the wrongful act of his child or accepted the benefit thereof, or that the child at the time the tort was committed was engaged in performing work or service for the father. *Teagarden* v. *McLaughlin, supra;* 1 Cooley, Torts (3d ed.), *122; Tiffany, Per. and Dom. Rel., §120; Schouler, Dom. Rel. (5th ed.), §263.

In view of these well-settled principles it has been held that where a father permitted his infant son, eleven years old, to ride the father's horse, the father was not liable for an injury resulting from the negligence of the child, while using the horse, in running over a person, for the reason that the wrongful act was not committed with the father's consent or at his direction and the son at the time was not performing any act for the father. *Smith* v. *Dav-*

*enport* (1891), 45 Kan. 423, 25 Pac. 851, 11 L. R. A. 429, 23 Am. St. 737. We conclude that the third paragraph of the complaint is sufficient on demurrer.

The evidence in the case establishes the following facts: On April 15, 1899, appellant resided in the town of Cloverdale, Putnam county, Indiana, and was engaged in selling implements and buggies. Clyde Broadstreet, his son, a boy between eight and nine years old, resided with his father as a member of his family. Clyde was small, weighing from fifty-five to seventy pounds, and was physically weak. He appears to have had a disposition for fast riding. At and prior to the time of the accident in question he had a reputation in the community in which he lived for riding horses in a reckless, careless and dangerous manner. He frequently rode his father's horse up and down Main street of said town in front of his father's store and house, in a reckless manner and at a dangerous rate of speed. Appellant was aware of the reckless and careless manner in which his son was accustomed to manage and ride a horse. He also knew his son's inability, by reason of his physical weakness and age, properly to manage and control a horse. On the morning of the day aforesaid appellant sent his said son with a message to Harrison Broadstreet, who lived some two or three miles distant from the town of Cloverdale, to inform him that a buggy which he had ordered through appellant had been received by the latter and was ready for delivery. Upon the occasion in question, appellant directed his hired man to catch and saddle the horse for Clyde to ride. Clyde, it appears, was so small that he was unable to saddle and mount the horse, and this service was generally performed by the hired man. Upon this occasion, after the horse was saddled, appellant placed his said son on the horse, put him in charge of it, and sent him out upon the highway to carry said message to Harrison Broadstreet.

Clyde, as it appears, rode the horse to the place where Harrison Broadstreet resided, delivered the message appellant had sent, and started on his return, riding along and over the public highway, which was the proper road for him to use in going and returning. On his return trip he rode the horse at a "lope" or gallop, whipping the horse all the way along the highway. At one point it appears that he came very near colliding with a buggy in which an old man, named Hood, was riding. After passing Mr. Hood he continued riding at the same rapid gait, galloping and whipping his horse, and urging it on "faster and faster," as a witness testified.

Appellee, at the time of the accident, was returning to her home from Cloverdale, traveling over the public highway in "an open-top buggy" which was driven by a Miss Foster, who had invited appellee to ride with her. Appellee and her companion had traveled along the highway in the buggy about one-half a mile when they met Clyde Broadstreet. When they first saw him he was about sixty yards beyond them, and was riding his horse at full speed. Miss Foster turned the horse she was driving to the right, as far as she could, but Clyde did not slacken his speed, nor did he do anything to check the horse which he was riding, but bore down at full speed upon the buggy in which appellee was traveling, and ran into the buggy. The horse upon which he was riding struck the front wheel of the buggy, breaking it, and also breaking the shaft, and appellee was thereby "knocked or thrown out" of the vehicle backwards, and seriously bruised and wounded. The injuries which she received at the time are shown to be serious and permanent, and greatly impaired her ability to perform labor or domestic duties. She has been rendered nervous and restless, and suffers much pain. There is no evidence to show that she was at the time of the accident guilty of contributory negligence. Under the authorities hereinbefore cited, we are satisfied that the evidence sustains the

verdict, and the motion of appellant, requesting the court to direct a verdict in his favor, was properly denied.

A transcript of an entry from the trial court's order-book, showing the return of the verdict, is as follows:

"Come again said jury in charge of the sworn bailiff aforesaid and by their foreman present to the court the following verdict: 'We, the jury, find for the plaintiff, and assess her damages in the sum of $1,500. B. B. Rusk, foreman.'"

As previously shown, appellant unsuccessfully moved for a *venire de novo,* on the grounds: (1) That the verdict was so ambiguous that no judgment could be rendered thereon; (2) that no damages were assessed by the jury. We are referred by appellant's counsel to a motion and an affidavit in support thereof, each of which is embraced in the bill of exceptions and shows that the verdict, as returned into court, reads as follows: "We, the jury, find for the plaintiff and assess her damages at 1,500," there being an entire absence of any dollar mark. But this fact is not verified by the order-book entry which, under the certificate of the clerk of the lower court, imports absolute verity and cannot be contradicted by the bill of exceptions in question, or the motion and affidavit therein contained. The entry of the verdict which the clerk has transcribed from the order-book, and certified as a true and correct entry, has attached immediately to the left of the 1,500 a dollar mark. If this was not the condition of the verdict when it was returned into court, appellant should not have permitted the clerk to transcribe the entry of the verdict into the order-book with the dollar mark immediately preceding the figures 1,500, as disclosed by the order-book entry hereinbefore set out. It follows that there is no defect in the verdict as it appears in the record herein, and the motion for a *venire de novo* was properly denied.

The court gave to the jury on its own motion seven instructions, by which it correctly and fully advised the jury in regard to the law applicable to the case. Appellant presented a request for twelve additional instructions. Eight of these were given by the court, but numbers two, eight, ten and eleven were refused. When the instructions given by the court on its own motion, and those which it gave at the request of appellant, are considered, we perceive no room for further instructions in behalf of appellant. In fact, it may be said that the instructions refused by the court, so far as they are correct, were embraced in those given by the court.

Appellant assails instruction number five of the series given by the court on its own motion. By this charge the jury was informed that the question as to whether appellant's son, at the time of the accident complained of, was engaged in the service of defendant and acting within the scope of his said service was one of fact to be determined from all of the evidence in the case. But in determining this question the court informed the jury that it was its duty to consider all of the evidence of the witnesses upon that subject, together with all of the facts and circumstances shown to exist in the case which had any bearing upon the question. The court further said in the charge in question that it "was not necessary that agency be established by direct or positive proof, but it may be established by circumstantial evidence." Appellant criticises that part of the charge which stated to the jury that the question was to be determined from all of the evidence in the case. Possibly this statement, standing alone, might be open to appellant's criticism that the jury was thereby given to understand that it, in the determination of the question as to whether the defendant's son at the time of the accident was engaged in the employment or service of the defendant, might consider all the evidence in the case, regardless of its pertinence

or bearing on that question, but the court, in that part of the charge immediately following, expressly stated to the jury that in determining the question it was its duty to consider all of the evidence upon that subject, together with all of the facts and circumstances shown to exist in the case which had any bearing thereon. Certainly the jury must have understood from this latter statement that in determining the question involved it must consider only such evidence as was pertinent to or had a bearing upon the question.

Complaint is made of the admission of certain evidence to show that appellant's son, in the neighborhood in which he resided, was, at and prior to the time in controversy, generally reputed to be careless and reckless in managing and riding horses. Complaint is also made because the court permitted witnesses to testify that prior to the time of such accident they frequently had seen appellant's son riding in a reckless and careless manner along Main street in the town of Cloverdale, in front of appellant's house and place of business. His riding on these occasions was so reckless and careless as to attract attention of persons on the street. The evidence in question as to the son's reputation was admissible to charge appellant with knowledge or notice of his son's careless and reckless manner of riding and controlling horses, and of his incompetency, for that reason, to be intrusted with the control and management of the horse at the time appellant sent him upon the errand in question. 1 Wigmore, Evidence, §249, and authorities cited; *Western Stone Co.* v. *Whalen* (1894), 151 Ill. 472, 38 N. E. 241, 42 Am. St. 244; 6 Thompson, Negligence (2d ed.), §7781; Wood, Master and Serv. (2d ed.), §421; 1 Shearman & Redfield, Negligence (5th ed.), §191.

The specific acts of reckless and careless riding at the time and place, testified to by the witnesses, were also admissible for the same purpose of charging ap-

pellant with knowledge or notice of his son's incompetency to control or manage the horse at the time he employed him to carry the message. *Pittsburgh, etc., R. Co.* v. *Ruby* (1871), 38 Ind. 294, 10 Am. Rep. 111; *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98.

The trial court, at the time the evidence in question was received, by an instruction to the jury limited the consideration thereof by that body to the legitimate purpose for which it was introduced. There was no error in admitting the evidence in question. Other minor points are discussed by appellant's counsel relative to the introduction of evidence. These rulings of the court we have considered, but discover no error therein. There being no available error presented by the record, the judgment is affirmed.