Leroy **MUSGROVE**, Plaintiff,

v.

G. Michael **BROGLIN**,
Individually, Defendant.

No. S 83–448.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 16, 1986.

Martin W. Kus, La Porte, Ind., for plaintiff.

William Patrick Glynn, III, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

#### I.

It is necessary and desirable to recite briefly the procedural history of this case in order to come to the issue that must be decided as the result of the bench trial that

was conducted in this case before the court sitting at Westville Correctional Center on the 10th day of November, 1986. The complaint in this case was originally filed *Pro se* by Leroy Musgrove while he was an inmate at the Westville Correctional Center on the 30th day of September, 1983. It purported to state a claim for constitutional violations under 42 U.S.C. §§ 1983 and 1981 and invoked this court's jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) and (4). On the 27th of December, 1983, a pretrial conference was held at the Westville Correctional Center at which time the defendants, State of Indiana, Indiana Department of Correction, but not its Director, and the Westville Correctional Center, but not its Superintendent were dismissed. Those rulings are fully justified on numerous grounds including the Eleventh Amendment of the Constitution of the United States and are now reconfirmed. On January 16, 1986, summary judgment was granted as to Anthony Metzus, Medical Director of the Westville Correctional Center, and that ruling is now reconfirmed.

An amended complaint was filed on January 23, 1984, in which Leonard Sales, a correctional officer at the Westville Correctional Center, was made an additional party defendant. Unfortunately, no service of process was ever effected upon Leonard Sales. Therefore, Sales is not a party defendant in this case.

On October 27, 1984, this court appointed Martin W. Kus as counsel for the plaintiff and he entered a formal appearance for the plaintiff on November 19, 1985. Kus has represented the plaintiff in an admirable and highly professional manner for which this court is very appreciative.

At the conclusion of the plaintiff's case presented at the trial on November 10, 1986, this court granted a motion pursuant to Rule 41(b) of the Federal Rules of Civil Procedure dismissing Captain J. Smith and that ruling is now reconfirmed. All claims against Smith are DISMISSED. Also, the evidence presented by plaintiff stated no claim against the Director of the Indiana Department of Correction. All claims against the Director in either his official or individual capacities are DISMISSED. Also, any and all damage claims as against G. Michael Broglin in his official capacity as Superintendent of the Westville Correctional Center are DISMISSED under the authority of the Eleventh Amendment of the Constitution of the United States.

II.

With all of the above prerequisites mentioned and laid aside, the critical question that this court must decide, under the authority of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and its progeny in this circuit, is whether G. Michael Broglin was deliberately indifferent to the medical needs of Leroy Musgrove while Broglin was Superintendent and Musgrove was an inmate at the Westville Correctional Center. Certainly any claim of Musgrove is inhibited under § 1983 by the twin cases of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), both decided January 21, 1986. The Supreme Court espoused a measure of conduct in the above cases which must be shown before a constitutional infringement protected by 42 U.S.C. § 1983 is implicated. The Court emphasized that only those rights directly derived from the Constitution, its Bill of Rights, and Amendments will be protected by 42 U.S.C. § 1983.

In *Daniels, supra,* the Court reviewed the § 1983 complaint of an inmate who argued that his liberty interest of freedom from bodily injury "without due process of law" pursuant to the Fourteenth Amendment had been abridged when the jail staff left a pillow case on the jail floor which the plaintiff slipped on resulting in physical injury. In *Daniels,* 106 S.Ct. at 664, the Court cited its prior holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), where it held that all that need be shown in a § 1983 suit is that a constitutional deprivation occurred and that there is no requirement of a showing of the defendant's "state of mind". The

Court concluded that the unintentional loss of a liberty, a right, property, or personal injury resulting from negligent action does not rise to a level which is protected by the Fourteen Amendment:

> To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law.

106 S.Ct. at 665. The Court, at 106 S.Ct. 666, made it clear that only those rights which are traditionally derived from an uncluttered and pristine reading of the Constitution, its Bill of Rights and Amendments will trigger Fourteenth Amendment protections:

> Our constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor,* 451 U.S., at 544, 101 S.Ct., at 1917.

The Court in *Daniels* concluded that the actions of the defendants of leaving a pillow case on a floor did not rise to the level of conduct which implicates the Due Process Clause of the Fourteenth Amendment.

> Where a government official's act causing injury to life, liberty or property is merely negligent "no procedure for compensation is constitutionally required." *Parratt,* 451 U.S. at 548, 101 S.Ct. at 1919 (POWELL, J., concurring in result) (footnote omitted).

106 S.Ct. at 666. The Court emphasized its narrow interpretation of those subject matters which can legitimately claim ancestry in the Constitution:

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectable legal interests. The enactment of tort claim statutes, for example, reflect the view that injuries caused by such negligence should generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns. (footnotes omitted).

106 S.Ct. at 666.

In *Davidson, supra,* another prison case, the plaintiff, an inmate, filed a § 1983 action against prison administrators alleging that they had abridged his right not to be subjected to cruel and unusual punishment as proscribed by the Eighth Amendment, and his right not to be deprived of personal security without due process of law as protected by the Fourteenth Amendment. Factually, the plaintiff asserted that he had sent a written message to a prison administrator informing the administrator that he had been physically threatened by a fellow inmate and that he feared assault from the inmate whose name was specified. Prison administrators ignored the message. The plaintiff was soon thereafter assaulted by the specified inmate by use of a fork, resulting in wounds to plaintiff's face, neck, head and body, and caused a broken nose. While citing its decision in *Daniels, supra,* the Court again held that the defendants' inattention to the written message did not rise beyond a level of conduct which could be described as negligent. The Court held that even though serious injury resulted from defendants'.conduct, the plaintiff was not protected by the Due Process Clause of the Fourteenth Amendment. *Davidson,* 106 S.Ct. at 670.

The plaintiff in *Davidson* attempted to distinguish and isolate the substantive claim (not to be deprived of personal security) from the procedural claim by arguing that his claim was "purely procedural," thus circumventing the requirement that plaintiff must show conduct beyond negligence. The Court reaffirmed that such an argument must fail because the procedural

aspect of the Fourteenth Amendment is only triggered if any underlying substantive right is at issue:

> In an effort to limit the potentially broad sweep of his claim, petitioner emphasizes that he "does not ask this Court to read the Constitution as an absolute guarantor of his liberty from assault by a fellow prisoner, even if that assault is caused by the negligence of his jailers." Brief for Petitioner 17, Describing his claim as one of "procedural due process, pure and simple," Id., at 14, all he asks is that New Jersey provide him a remedy. But the Fourteenth Amendment does not require a remedy when there has been no "deprivation" of a protected interest.

Davidson, 106 S.Ct. at 670. The Court in Davidson concluded that the complaint failed because "the protections of the Due Process Clause, whether procedural of substantive, are just not triggered by lack of due care by prison officials." Davidson, 106 S.Ct. at 671.

Most recently, at least one judge on our Court of Appeals has summarized: "Negligence is not itself actionable. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)." Kirchoff v. Flynn, 786 F.2d 320, 323 (7th Cir.1986). See also Bodine v. Elkhart County Election Board, 788 F.2d 1270, 1272 (7th Cir.1986), and Rascon v. Hardiman, 803 F.2d 269 (7th Cir.1986).

In Shelby County Jail Inmates v. Westlake, 798 F.2d 1085 (7th Cir.1986), Judge Wood, speaking for the Court near the end of the opinion, stated:

> The language used by the district court to instruct the jury is consistent with recent Supreme Court and Seventh Circuit law. In Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Supreme Court held that only "deliberate or callous indifference," not "lack of due care" (i.e., negligence), is actionable under the Fourteenth Amendment. Id., 106 S.Ct. at 670–71. See also Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). There is no reason to believe that the Constitu-

tion sets a lower threshold for Eighth Amendment claims. In the leading case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court held that a negligence tort, medical malpractice, does not violate the Eighth Amendment. 429 U.S. at 106, 97 S.Ct. at 292.

> A number of recent Seventh Circuit cases have rejected a negligence standard for violations of the Eighth Amendment. See Duckworth v. Franzen, 780 F.2d 645, 652–53 (7th Cir.1985); Watts v. Laurent, 774 F.2d 168, 172 (7th Cir. 1985), cert. denied, —— U.S. ——, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985); Estate of Davis v. Johnson, 745 F.2d 1066, 1070 (7th Cir.1984). The cases have required the plaintiffs to prove deliberate or callous indifference, evidenced by an actual intent to violate the inmate's rights or reckless disregard for the inmate's rights, in order to prevail on an Eighth Amendment claim. See Duckworth, 780 F.2d at 652–53; Watts, 774 F.2d at 172; Benson, 761 F.2d at 339. We conclude that Instruction # 31 accurately stated the burden of proof under both the Eighth and Fourteenth Amendments.

798 F.2d at 1094. Instruction 31 referred to in the above quotation stated:

> Mere negligence or inadvertence on the part of the county officials is not sufficient to sustain a violation of the Eighth Amendment. County officials must act in callous indifference to the dangers faced by a prisoner or intentionally inflict cruel and unusual punishment before they will incur liability for an Eighth Amendment violation. In order to show callous indifference plaintiffs must prove the existence of a "pervasive risk of harm" from other inmates, and that jail officials failed to reasonably respond, knowing of that risk. A pervasive risk of harm may be established by proving that violence or sexual assaults occur with sufficient frequency that inmates are put in reasonable fear for their safe-

ty and to reasonably apprise prison officials of the existence of the problem and the need for protective measures. Once a pervasive risk has been established, it must be determined whether the jail officials reasonably responded to that risk. 798 F.2d at 1093, n. 10. It must be understood that the pervasive risk of harm referred to in the aforesaid instruction is that of sexual assaults from other inmates. In this case, the pervasive risk of harm was a correctional employee who had to personally deal with inmates every day and was nothing more that a human time bomb ready to explode. The superintendent had notice of this fact and his failure to act accordingly extends over the line of negligence and falls into the area of deliberate indifference.

The Supreme Court has long since held Amendment VIII applicable to the states under Amendment XIV. *See Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947). *See also Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) for the specific application thereof where the assaultive conduct of a prison guard is involved.

 This court respectfully declines plaintiff's invitation to bottom any decision under 42 U.S.C. 1981 for a claim for procedural due process rights in failing to properly investigate this incident. The record here points in the opposite direction and no factual basis for relief under § 1981 is presented.

### III.

On Sunday, January 9, 1983, at 1:20 P.M., the plaintiff an inmate housed in 4 Dorm, was attacked without warning by Leonard Sales. Musgrove was twenty-six years old at the time and was serving a state ordered sentence at the Westville Correctional Center. Sales had just completed his population count for 4 Dorm when he saw the plaintiff still lying on his inmate bed. Sales ordered him off the bed and further ordered him to make the bed. Musgrove exchanged words with Sales and Sales called plaintiff a "nigger" and threat-

ened to bust his head if he didn't follow orders. The plaintiff is a black person and Sales is Caucasian. During the conversation, Sales suddenly reached down and turned over the bed causing plaintiff to strike the tile floor with his knees and elbows. Sales was never physically threatened by Musgrove. Plaintiff was unable to immediately get up from the floor. Sales left the area to report the incident by phone to Captain James Smith. While waiting for Smith, Sales returned to Musgrove's bed and threatened the plaintiff with additional serious injury if he brought a suit against Sales as a result of his attack on Musgrove.

Sales later assaulted another black inmate, Frank Jones, on February 3, 1983. An investigation was conducted but no discipline was given. After Sales attacked James Parker, a white inmate, on February 24, 1983, he was disciplined and discharged on February 24, 1983.

As a result of the attack by Sales, the plaintiff suffered bilateral hyperextended knees which cause immediate pain in both knees and decreased mobility. He was eventually prescribed metal knee braces because his knees kept "popping out". He used a cane to assist him in walking among the general population. His injury left him vulnerable to more mobile inmates. He had never experienced any pain of this nature in his knees prior to the attack. He continues to wear the braces and to feel pain in both knees and admits the braces have corrected the problem of his knees giving out on him, but will need to wear the braces in the future.

Sales first came to Westville Correctional Center on transfer from the Indiana State Prison on December 16, 1979. The documents of Sales' employment and investigative file presented at trial show Sales was an immediate problem employee with a spotty work record. In the more than three years as a Westville Correctional Center guard, Sales was absent or tardy over forty times. He was issued written warnings for poor attendance on ten occasions, warned in writing of his failure to

complete assignments and to report staff shortages, and was suspended on four different occasions for attendance violations.

In addition to his failure to follow attendance rules, Sales was also written up one on March 25, 1980 for threatening inmates, gambling and profanity. He was later also investigated by the Westville Correctional Center's investigator for these same charges as well as for hitting inmates and dealing in contraband on August 7, 1981. Defendant Broglin received a copy of the charges and investigations as part of prison procedure. Sales denied the accusations and voluntarily submitted himself to a polygraph examination. In the opinion of the polygraph operator, Sales was deceptive in his answers to some questions. The investigation of Sales was never completed and no reason was ever given as to why. Sales also refused to continue with said polygraph examination on September 30, 1981.

The Westville Correctional Center operates under a progressive disciplinary procedure, whereby an employee is reprimanded with progressively more severe penalties for continued work-rule infractions. The progression begins with the least severe written warning and can end with the most severe dismissal. After two to three suspensions, termination is warranted. Here such progression policy was ignored. His suspensions for attendance followed no clear progressive pattern but were as follows: August 5, 1980, three days; January 15, 1982, one day; August 23, 1982, one day; and October 4, 1982, three days. Moreover, his first warning on March 25, 1980 for threats and gambling occurred before his first suspension of three days and the investigation of his second charge of gambling and threats, as well as violence on August 7, 1981, occurred before his second suspension of only one day.

Supervisors at the Westville Correctional Center, including G. Michael Broglin, the superintendent, testified that conduct similar to Sales' conduct, prior to his attack on the plaintiff, would warrant suspension or dismissal if proven. However, Broglin and his supervisors were previously concerned about the cost of retraining a new guard and the probability of facing an employee discharge hearing in Indianapolis if Sales was terminated.

G. Michael Broglin, the superintendent of the Westville Correctional Center, has the ultimate responsibility for all disciplinary actions against employees which he did not delegate. He alone approves or denies recommendations for discharge and has the authority to discharge an employee without a recommendation. Broglin himself established the procedure in Directive 2-14 for reporting all incidents of violence involving a staff member which called for written notice to him. He ranks violence within the institution as a high priority concern. Broglin usually rubber stamps his subordinates' recommendations on employees with regard to merit increases in pay. However, with regard to discipline of Sales, Broglin also admitted that if Sales' record showed his signature, then he did not delegate that particular action. Broglin reviewed and signed each of the suspensions to Sales. He admitted he does not have the personnel file with him when he reviews suspension requests. Broglin admitted that, other than his memory, he had no system to keep track of employees who are disciplined on a repetitive basis. He testified he would be able to keep track of charges of violence and threats to inmates by an employee but testified he had no memory of Sales being charged with threats on March 25, 1980, or of the August 7, 1981, incident and investigation. Broglin did, however, admit he could have seen the reports on Sales' investigation and polygraph but has now forgotten the file. However, Broglin admits the investigation with a polygraph examination of an employee is an important event, likely to catch his attention. This court finds that Broglin did receive and at one time reviewed all documents on Sales' conduct and used as exhibits in this trial.

The record on attendance alone is adequate to justify termination of Sales prior to January 9, 1983, the date of the attack on plaintiff. The documented investigation

of the August 7, 1981, incidents of threats and gambling, coupled with the March 25, 1980, warning for identical misconduct, indicates Sales was an unfit employee prone to repetitive violations of work rules as well as violence. Allowing Sales to remain on the personnel staff disregarded his obvious potential for violence.

Supervisors at Westville Correction Center relied upon Broglin's memory to discipline repeat offenders such as Sales. Broglin had no system to alert himself to a repeat offender such as Sales. Broglin, however, admitted that if he had looked at Sales' record as it was presented at trial before him, he would in all probability discharged Sales prior to his attack on the plaintiff.

The trial in this case indicated that Leonard Sales was anything but an ideal employee. Under the tort law of Indiana, this court would have no difficulty whatsoever in applying the concept of negligent selection and negligent entrustment by this employer of this employee. *See Broadstreet v. Hall,* 168 Ind. 192, 80 N.E. 145 (1907). However, there are two inhibitions on applying that concept here. First, under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Adams v. Pate,* 445 F.2d 105 (7th Cir.1971), and their respective progeny in this circuit, the concept of respondeat superior cannot be the basis of a recovery under § 1983. *See Rascon v. Hardiman,* 803 F.2d at 274. A further inhibition has now been made clear in *Daniels, supra,* and *Davidson, supra,* that recovery in a § 1983 case on grounds of negligence is precluded. It is readily apparent that negligent preclusion applies to due process claims under the Fourteenth Amendment as well as claims for cruel and unusual punishment under the Eighth Amendment. Therefore, the plaintiff has the burden to establish that the conduct of Broglin involved a deliberate indifference that caused physical injury to this plaintiff.

This court had an opportunity to see and observe Leroy Musgrove in the courtroom and believes that his version of the events was consistent and credible. Indeed, the Attorney General of Indiana made no serious attempt to challenge his credibility and to challenge his version of the events that took place on January 9, 1983.

The battleground of this case, both legally and factually, centers around the dimensions of the concept of deliberate indifference as taught in *Estelle v. Gamble, supra,* and as applied in recent cases in this circuit. *Walker v. Rowe,* 791 F.2d 507 (7th Cir.1986); *Caldwell v. Miller,* 790 F.2d 589 (7th Cir.1986); *Benson v. Allphin,* 786 F.2d 268 (7th Cir.1986). It is a very close call.

This court must weigh the testimony of G. Michael Broglin and evaluate his credibility as this court saw it *in this case.* This court is well aware that Mr. Broglin had sustained some personal injuries and was in some discomfort at the time of his testimony and this is credited in his favor. This court is also aware of the enormous responsibilities and difficult dilemmas that one who manages a major correctional institution must face. This court must carefully delineate that it is making a credibility determination here and is in no way making a wholesale condemnation of Mr. Broglin as administrator or his credibility in general. This court observed very closely both the words and the conduct of G. Michael Broglin on the witness stand during both direct examination, cross-examination and succeeding examinations. Mr. Kus' cross-examination was tough and searching but thoroughly professional. This court has the greatest difficulty in crediting that part of Mr. Broglin's testimony which indicated that he was not aware of the contents of the polygraph report and the conduct of Leonard Sales in regard thereto.

 There is no question in this court's mind that the evidence in this case leads, without serious dispute, to the conclusion that Leonard Sales violated the Eighth Amendment rights of Leroy Musgrove by causing specific personal injury to Leroy Musgrove which effects of said injury still exist. The question is whether the conduct of G. Michael Broglin went beyond

mere negligence and therefore falls into the category of deliberate indifference. It is with considerable reluctance that this court is constrained to answer that question in the affirmative. In doing so, this court must and does specifically discredit that part of the Broglin testimony with regard to his knowledge of the polygraph examination results and Leonard Sales' conduct relating thereto. This court is also very sympathetic to the fact that there are statutorily created rights and procedures under the law of Indiana in regard to employees of the Department of Correction. The Superintendent must be careful to adhere to the procedural due process rights that inhere in those provisions of the Indiana law. *See* I.C. §§ 4–15–2–34 and 4–15–2–27.

The Attorney General has also argued that the damage claim of Musgrove should be precluded because of the failure to comply with the notice provisions of the Indiana Tort Claims Act under I.C. § 34–4–16.5. This court has had occasion to specifically rule on that question in a number of cases and in at least one published opinion. *See Craig v. Witucki*, 624 F.Supp. 558 (N.D.Ind.1986). Until told to do otherwise, this court will adhere to *Craig*. Otherwise, this complaint was filed well within the applicable two year statute of limitation under the statutory law of Indiana. *See Bell v. Metropolitan School Dist. of Shakamak*, 582 F.Supp. 3 (S.D.Ind.1983).

This court is also aware of the fact that it is extremely difficult for those who administer correctional and penal institutions in the State of Indiana to secure adequate on-the-line correctional officers given the low level of pay that is available for them. However, the record of Leonard Sales is egregious even in the context of that fiscal austerity. This court must and does conclude that G. Michael Broglin was deliberately indifferent toward the need to remove Sales from the work force and that deliberate indifference was a direct and proximate cause of the plaintiff's injuries. This conclusion is not in any way based upon any concept of negligence.

## IV.

The medical records that are before the court are massive and largely undisputed. The so-called special damages in this court are minimal, but this court did have a chance to see the devices that this plaintiff was wearing in the courtroom and heard the evidence regarding the same. Giving a reasonable discount to that evidence in favor of the plaintiff, this court has concluded that the injury itself, as well as the pain and suffering resulting therefrom, are worth $12,000.00. This court now awards damages in that sum in favor of the plaintiff, Leroy Musgrove, and against the defendant, G. Michael Broglin, and the Clerk shall enter judgment accordingly. Costs are also awarded to the plaintiff against the defendant. The court will also award attorney fees to Martin W. Kus pursuant to Title 42 U.S.C. § 1988, and he should file his affidavit in regard to the same by January 16, 1987. The defendant should respond thereto by February 13, 1987. IT IS SO ORDERED.